## JEREMY HACKLING *v.* CASBRO CONSTRUCTION OF RHODE ISLAND
### (AC 20730)

Foti, Landau and O'Connell, Js.

Argued September 14—officially released December 11, 2001

*Jeremiah Donovan*, for the appellant (plaintiff).

*John W. Mills*, for the appellee (defendant).

*Opinion*

FOTI, J. The plaintiff in this personal injury action, Jeremy Hackling, appeals from the judgment of the trial court denying his posttrial motions to set aside the jury verdict and for a new trial. The jury found that the plaintiff and the defendant, Casbro Construction of Rhode Island, were each 50 percent at fault for the plaintiff's injuries and awarded damages accordingly. On appeal, the plaintiff claims that the court improperly denied his posttrial motions because (1) defense counsel engaged in misconduct that denied him the right to a fair trial, (2) the court improperly precluded rebuttal

evidence, (3) the jury improperly found that he was 50 percent at fault for his injuries, (4) the jury awarded him inadequate noneconomic damages and (5) the court improperly denied his request for jury interrogatories. We affirm the judgment of the trial court.

The jury reasonably could have found the following facts. On October 6, 1993, the plaintiff, who was in the building demolition business, was at a job site in Stamford, operating a machine that he used to fill a tractor trailer truck with debris from a demolished building. The defendant owned the tractor trailer, and Robert Poons, an employee of the defendant,[1] operated it on that day.

After loading the defendant's trailer, the plaintiff stood by the driver's side of the truck and conversed with Poons, who was standing on top of the debris in the trailer. They were discussing a piece of carpet that was hanging over the side of the trailer. The plaintiff left to get a knife to cut the overhanging carpet. Upon his return, he approached the trailer. While the plaintiff was standing within three feet of the passenger side of the trailer, Poons threw a piece of concrete over that side of the trailer. The concrete struck the plaintiff, who sustained an injury to the back of his head. An ambulance responded to the scene within minutes and transported the plaintiff to a hospital where he was treated and released.

By way of an amended complaint filed on August 11, 1997, the plaintiff alleged that the defendant negligently caused the plaintiff's injuries. The defendant denied that it had caused any injuries and alleged, by way of a special defense, that any injuries suffered by the plaintiff were caused by his own negligence in that he had failed to wear head protection while on the job site. The jury found both parties 50 percent negligent

---

[1] The plaintiff did not bring an action against Poons.

and awarded the plaintiff $7253 in economic damages and $30,000 in noneconomic damages. The court later reduced the plaintiff's damages award by 50 percent to reflect the jury's finding of comparative negligence.

Thereafter, the plaintiff filed a motion to set aside the verdict and for additur and a motion for a new trial. The plaintiff argued, on a variety of grounds, that the court should set aside the verdict and grant a new trial. After a posttrial hearing, the court denied the motions. This appeal followed.

"[T]he proper appellate standard of review when considering the action of a trial court granting or denying a motion to set aside a verdict and motion for a new trial . . . [is] the abuse of discretion standard. . . . In determining whether there has been an abuse of discretion, every reasonable presumption should be given in favor of the correctness of the court's ruling. . . . Reversal is required only where an abuse of discretion is manifest or where injustice appears to have been done. . . . [W]e do not . . . determine whether a conclusion different from the one reached could have been reached." (Citations omitted; internal quotation marks omitted.) *Davis* v. *Fracasso*, 59 Conn. App. 291, 295, 756 A.2d 325 (2000).

I

The plaintiff claims that the court improperly denied his motions to set aside the verdict and for a new trial. Specifically, the plaintiff claims that opposing counsel's "repeated misconduct" deprived him of a fair trial. The plaintiff raises a laundry list of perceived incidents of "unpalatable tactics" of the defendant's counsel during the entire trial. Those incidents include improper objections, mischaracterizations of evidence and improper opening and closing arguments.

In his brief, the plaintiff completely fails to set forth an adequate explanation and analysis of how opposing

counsel's behavior in any way harmed him. The plaintiff also failed to cite a single case in support of his claims. "Analysis, rather than mere abstract assertion, is required in order to avoid abandoning an issue by failure to brief the issue properly." (Internal quotation marks omitted.) *Giulietti* v. *Giulietti*, 65 Conn. App. 813, 840, 784 A.2d 905, cert. denied, 258 Conn. 946, 947, 788 A.2d 95, 96, 97 (2001). Moreover, the plaintiff failed to preserve many of his claims of "outrageous" conduct for our review by raising timely objections at trial. Accordingly, we decline to address these claims.

## II

The plaintiff next claims that the court abused its discretion when it precluded (1) the admission of one of the plaintiff's report cards and (2) the testimony of the plaintiff's rebuttal witness, Vernon Koch.[2] We are not persuaded.

The following additional facts are necessary for the resolution of this issue. The trial was scheduled to begin in January, 1999. Just prior to its commencement, the plaintiff disclosed that he was claiming that the accident caused him to suffer a traumatic brain injury that depressed his intelligence quotient. The defendant responded by indicating that it wanted its own expert, Kimberlee Sass, a licensed clinical neuropsychologist, to examine the plaintiff. The court granted the defendant's request. Prior to his examination of the plaintiff, Sass insisted on having all of the plaintiff's scholastic records made available for his review. The plaintiff agreed in writing to disclose all scholastic records to the defendant. The plaintiff represented that he had complied with that agreement by assuring defense counsel that he had produced *all* of the records in his possession. This, however, was not the case because one report card remained undisclosed. Nevertheless, without knowledge of the undisclosed report card, Sass

---

[2] Koch was the headmaster of the plaintiff's grade school.

conducted his examination of the plaintiff and made his diagnosis based on the information that was made available to him.

On direct examination, Sass testified that he believed that the plaintiff suffered from a learning disability long before the incident in question. Consequently, Sass concluded that the plaintiff did not suffer from a traumatic brain injury. On cross-examination, the plaintiff asked Sass specific questions that directly related to comments that were handwritten on the undisclosed report card. The plaintiff elicited from Sass that his opinion was inconsistent with comments written on the report card concerning the plaintiff's relationships with other students and his capacity to be a "leader." In an effort to discredit Sass' testimony, the plaintiff attempted to use the undisclosed report card to his advantage. Defense counsel immediately objected on the ground that the plaintiff had not disclosed the report card. The court sustained the objection.

Following Sass' testimony, the plaintiff informed the court that during rebuttal he intended to call Koch as a witness to testify to his personal recollection of the plaintiff and also to admit through Koch the undisclosed report card as a business record. The court allowed Koch to testify out of the presence of the jury so that it could evaluate his testimony and so that the plaintiff could create a full record. The court disallowed the admission of his testimony and the undisclosed report card.

The court's preclusion of rebuttal evidence is reviewed under an abuse of discretion standard. "The admission of rebuttal evidence ordinarily is within the sound discretion of the trial court. In considering whether a trial court has abused its discretion, appellate courts view such a trial court ruling by making every reasonable presumption in favor of the decision of the

trial court." *Outdoor Development Corp.* v. *Mihalov*, 59 Conn. App. 175, 183, 756 A.2d 293 (2000).

The court gave three reasons why it disallowed both the report card and Koch's testimony. The court explained: "First, the report card should have been produced to the defendant earlier. . . . The plaintiff's claim that he had been candid by stating that he had produced all school records in *his* possession, because the fifth grade report card was in his *mother's* possession, [was] disingenuous. . . . Second, the manner of this plaintiff's cross-examination of Sass reflects that it was manufactured as a vehicle to introduce in rebuttal a document that in fairness should have been produced earlier and offered during the plaintiff's case-in-chief.[3] . . . Finally, it would have been manifestly unfair to the defendant to permit the introduction of the exhibit at a time when Sass has left the jurisdiction and could not be recalled to explain his earlier testimony." (Citations omitted; emphasis in original.)

The trial court is in a better position than this court to assess the veracity and motives of counsel. The defense specifically requested all scholastic records so that Sass could reach an informed opinion. Sass' diagnosis could have been influenced by this report card, but he never had the opportunity to consider it. Instead, the plaintiff withheld the report card, without sufficient explanation, in an apparent effort to surprise the defendant and to discredit his expert witness, Sass, without affording Sass the opportunity to explain or revise his earlier testimony. This demonstration of trial tactics prompted the court to comment on the "apparent lack

---

[3] The court, citing *Hathaway* v. *Hemingway*, 20 Conn. 191, 195 (1850), noted: "The rule upon this subject is a familiar one. When, by the pleadings, the burden of proving any matter in issue is thrown upon the plaintiff, he must, in the first instance, introduce all the evidence upon which he relies to establish his claim. He cannot, as said by Lord Ellenborough, go into half his case, and reserve the remainder."

of good faith" between the parties in this case and how such behavior ultimately served to disrupt the trial system as a whole. Additionally, the record reveals that it was not, as the plaintiff suggests, "almost impossible" for the court to find that the report card was not evidence made necessary by the defendant's case. Accordingly, the court did not abuse its discretion in excluding the report card.

It follows that the court also did not abuse its discretion when it excluded Koch's testimony, insofar as his testimony reflected the comments written on the report card. The plaintiff, however, sought to have Koch testify in rebuttal as to his personal recollection of the plaintiff. After reviewing the record, we conclude that the court properly excluded Koch's testimony because of the possibility of unfairness to the defendant. "A litigation strategy that features surprise to the adversary is no longer tolerated." (Internal quotation marks omitted.) *Baxter* v. *Cardiology Associates of New Haven, P.C.*, 46 Conn. App. 377, 385, 699 A.2d 271, cert. denied, 243 Conn. 933, 702 A.2d 640 (1997).

### III

The plaintiff next claims that the court improperly concluded that the jury reasonably could have found that he was 50 percent negligent. There is no merit to this claim, and, therefore, we disagree that the court abused its discretion in accepting the jury verdict.

In addition to the jury's finding that Poons threw a piece of concrete over the side of the trailer that struck the plaintiff in the head, the jury reasonably could have found that the plaintiff (1) improperly loaded the trailer, (2) knew that Poons was working on top of the trailer when he returned, and (3) failed to warn Poons that he was next to the trailer and to wear a hard hat.

Our standard of review is well settled: "A verdict must stand if it is one that a jury reasonably could have

returned and the trial court has accepted." *Sorrentino* v. *All Seasons Services, Inc.*, 245 Conn. 756, 773, 717 A.2d 150 (1998).[4] Both parties put forth conflicting evidence regarding fault. In the presence of conflicting evidence, it is the jury's province to decide which evidence is more credible, and the court's authority to nullify a jury's finding is limited. See *Beverly* v. *State*, 44 Conn. App. 641, 647, 691 A.2d 1093 (1997). We conclude that the record is replete with evidence supporting the jury's findings of comparative negligence. The court was, therefore, correct in accepting the jury's finding.

## IV

The plaintiff next claims that the jury awarded him inadequate noneconomic damages and that the court improperly declined to set aside the verdict. We disagree.

"The test that governs the propriety of the amount of an award in these circumstances is whether the

---

[4] The plaintiff has the burden of proving by a fair preponderance of the evidence that the defendant was in fact negligent. See *Stewart* v. *Federated Dept. Stores, Inc.*, 234 Conn. 597, 608, 662 A.2d 753 (1995). A jury verdict in which the plaintiff is found to be 50 percent comparatively negligent is not inconsistent with this burden. To prove comparative negligence, the defendant must also prove by a fair preponderance of the evidence that the plaintiff was in fact negligent. See id. The fact finder must allocate the percentage of fault attributable to each party once it makes a finding of comparative negligence, which in effect is a finding of joint culpability. See *Bhinder* v. *Sun Co.*, 246 Conn. 223, 242, 717 A.2d 202 (1998); see also *Williams Ford, Inc.* v. *Hartford Courant Co.*, 232 Conn. 559, 585–86, 657 A.2d 212 (1995). General Statutes § 52-572h (b) reduces the amount of a plaintiff's damages based on his percentage of negligence or abrogates completely a plaintiff's ability to recover in cases in which he is found to be more than 50 percent negligent. Section 52-572h (b) provides in relevant part: "In causes of action based on negligence, contributory negligence shall not bar recovery in an action by any person . . . if the negligence was not greater than the combined negligence of the person or persons against whom recovery is sought . . . . The economic or noneconomic damages allowed shall be diminished in the proportion of the percentage of negligence attributable to the person recovering . . . ."

award falls somewhere within the necessarily uncertain limits of just damages or whether the size of the verdict so shocks the sense of justice as to compel the conclusion that the jury was influenced by partiality, prejudice, mistake or corruption." (Internal quotation marks omitted.) *Sorrentino* v. *All Seasons Services, Inc.*, supra, 245 Conn. 772. "On issues where the evidence allows room for reasonable differences of opinion among fairminded people, if the conclusion of the jury is one that reasonably could have been reached, it must stand even though the trial court might have reached a different result." *Parasco* v. *Aetna Casualty & Surety Co.*, 48 Conn. App. 671, 676, 712 A.2d 433 (1998).

In the present case, the parties hotly contested the issue of damages. Each party proffered evidence that conflicted with the other's evidence concerning the extent of the plaintiff's injuries. "The jury is entrusted with the choice of which evidence is more credible and what effect it is to be given." (Internal quotation marks omitted.) *Beverly* v. *State*, supra, 44 Conn. App. 647. "The jury was not compelled to accept the plaintiff's claims as to the severity of [his] injuries, no matter how persuasive that evidence might have seemed to the trial court." *Parasco* v. *Aetna Casualty & Surety Co.*, supra, 48 Conn. App. 676. "A verdict should not be set aside . . . where it is apparent that there was some evidence on which the jury might reasonably have reached its conclusion." *Salaman* v. *Waterbury*, 44 Conn. App. 211, 214, 687 A.2d 1318 (1997), rev'd on other grounds, 246 Conn. 298, 717 A.2d 161 (1998). The record contains substantial evidence to support the jury's award of noneconomic damages. Consequently, we find no abuse of the court's discretion in upholding the award.

## V

The plaintiff's final claim is that the court abused its discretion in denying his request for jury interrogatories. We do not agree.

The following facts are relevant to the resolution of this issue. On September 8, 1999, the court ordered, without objection, that requests to charge the jury be filed no later than September 10, 1999. The plaintiff, by filing his original interrogatories before the deadline of September 10, 1999, complied with the court's order. On September 24, 1999, the court granted the defendant's request to file amended special defenses. At that time, the court did not change or vacate its prior order regarding jury interrogatories. Nevertheless, the plaintiff failed to request an opportunity to amend his original interrogatories, which had become essentially meaningless once the defendant filed its special defenses. Instead, the plaintiff waited ten days until the morning of October 5, 1999, immediately before the court had called out the jury for final arguments and the charge, to make such a request. The court denied the plaintiff's request.

We review the court's denial of the plaintiff's request for jury interrogatories under an abuse of discretion standard. "Where two or more counts have been alleged in a complaint, or when two or more causes of action are incorporated in one count, as here, the defendant has the right to save himself from the implication of a general verdict by seeking from the jury answers to apt and proper interrogatories. . . . In such situations, it is the duty of the trial court, upon request, to submit such interrogatories as would accomplish this purpose." (Internal quotation marks omitted.) *Chapman* v. *Norfolk & Dedham Mutual Fire Ins. Co.*, 39 Conn. App. 306, 315, 665 A.2d 112, cert. denied, 235 Conn. 925, 666 A.2d 1185 (1995). "The trial court has broad discretion to regulate the manner in which interrogatories are presented to the jury, as well as their form and content." *Corcoran* v. *Taylor*, 65 Conn. App. 340, 346, 782 A.2d 728, cert. denied, 258 Conn. 925, 783 A.2d 1027 (2001). The discretion afforded to the trial court, "by definition, means a discretion that is not exercised arbitrarily or wilfully, but with regard to what is right and equitable

under the circumstances and the law . . . . And [it] requires a knowledge and understanding of the material circumstances surrounding the matter . . . . In our review of these discretionary determinations, we make every reasonable presumption in favor of upholding the trial court's ruling." (Citations omitted; internal quotation marks omitted.) *Emerick* v. *Kuhn*, 52 Conn. App. 724, 745, 737 A.2d 456, cert. denied, 249 Conn. 929, 738 A.2d 653, cert. denied sub nom. *Emerick* v. *United Technologies Corp.*, 528 U.S. 1005, 120 S. Ct. 500, 145 L. Ed. 2d 386 (1999).

The court, as our rules of practice permit,[5] set September 10, 1999, as the deadline for filing interrogatories. As a result, subsequently filed interrogatories were necessarily untimely unless the plaintiff timely sought and was granted permission to submit such interrogatories to the jury. The plaintiff failed to make a timely request for additional interrogatories because he filed his request, as the court described it, "almost literally at the last minute . . . ."

The trial court is better situated than this court to "sense the atmosphere of a trial and can apprehend far better than we can, on the printed record," the competing interests involved. (Internal quotation marks omitted.) *Beverly* v. *State*, supra, 44 Conn. App. 647. It is clear from the record that the court took into account the competing interests of counsel, as well as the interests of the court and the jury. On the basis of those interests, the court made a fair and equitable ruling. See *State* v. *Williams*, 195 Conn. 1, 8, 485 A.2d 570 (1985).

The court was well within its sound exercise of discretion when it denied the plaintiff's request. As the

---

[5] Practice Book § 16-22 provides in relevant part: "Written requests to charge the jury and written requests for jury interrogatories must be filed with the clerk before the beginning of arguments or at such an earlier time as the judicial authority directs . . . ." See also *Pedersen* v. *Vahidy*, 209 Conn. 510, 515, 552 A.2d 419 (1989).

court explained, its concern was that the last minute request would unfairly "visit surprise" on the defendant. The court also discussed the burden that this request would have had on the jurors, who would have experienced a further delay in an already protracted trial proceeding because of the late request. This is so because the defense and the court would have needed time to review and possibly to redraft the plaintiff's proposed interrogatories. As the court further explained, the inclusion of interrogatories also would have necessitated additional instructions to the jury. The court properly afforded the plaintiff his right to submit interrogatories. The court's authority to limit this right, however, is set forth in our rules of practice[6] and is made necessary by practical considerations inherent in presiding over a trial.

Although the plaintiff's counsel attempted to justify his failure to comply with the court's order based on the myriad of matters that arose during trial, the court was not persuaded. It is clear from the record and the court's comprehensive discussion of this issue in its memorandum of decision that the court exercised its authority in a rational manner consistent with its authority.

The judgment is affirmed.

In this opinion the other judges concurred.

---

[6] See footnote 5.