STATE OF CONNECTICUT *v.* REGINALD REESE
(AC 23075)

Flynn, Bishop and Hennessy, Js.

Argued January 14—officially released June 3, 2003

*Alice Osedach-Powers*, assistant public defender, for the appellant (defendant).

*C. Robert Satti, Jr.*, senior assistant state's attorney, with whom, on the brief, was *Jonathan C. Benedict*, state's attorney, for the appellee (state).

*Opinion*

BISHOP, J. The defendant, Reginald Reese, appeals from the judgment of conviction, rendered after a jury trial, of murder in violation of General Statutes § 53a-54a (a). On appeal, the defendant claims that the trial court improperly (1) prohibited him from presenting evidence to rebut the court's finding of probable cause,[1] (2) prohibited him from introducing the prosecution's statements from the previous trial of another defendant for the same offense and the long form information used in that trial, (3) admitted a redacted version of a witness' statement that misled the jury and was funda-

---

[1] The defendant claims, as well, that the court applied an improper standard of review in making its probable cause determination. Although the defendant did not seek an articulation from the court to determine the standard of review it utilized, the defendant claims that it can be implied from the record that the court did, in fact, employ an incorrect standard. In his brief, the defendant asserts that "[t]he trial court acknowledged that 'clearly, there's an [identification] problem in this case.' . . . Despite that, it prohibited the defense from presenting evidence that the defendant was not the shooter, declaring, 'I don't think it makes any difference.' . . . By its actions, the court *implicitly* drew all inferences and resolved any questions of credibility in favor of the state . . . ." (Emphasis added.) We do not believe that those comments of the trial judge, without further articulation, provide an adequate basis to conclude that the court utilized an improper standard in determining probable cause. As a consequence, the record is inadequate to review the defendant's claim. See *State* v. *Feliciano*, 74 Conn. App. 391, 402, 812 A.2d 141 (2002), cert. denied, 262 Conn. 952, 817 A.2d 110 (2003).

mentally unfair, and (4) admitted a photograph of the defendant taken approximately six weeks prior to the incident at issue. We affirm the judgment of the trial court.

The jury reasonably could have found the following facts. On August, 10, 1998, at approximately 2:35 p.m., at the courthouse on Golden Hill Street in Bridgeport, Sheriff William Harrell was standing outside on a break from work. Informed by an unknown male that a fracas was taking place in front of the courthouse, Harrell walked to the sidewalk area of the parking lot and looked around the corner. He saw a group of six or seven black males involved in a fight in the middle of the street directly in front of the courthouse steps. As he proceeded to the area of the fight, hearing a gunshot, he dove to the ground and then heard five or six more gunshots. Approximately thirty seconds later, he looked to the area of the fight and saw that the group was dispersing. He also saw one male lying on the ground. Harrell was unable to identify any of the males involved in the altercation.

Brian Steskla, an off-duty employee of the department of correction, was seated in his car parked diagonally across the street from the front of the courthouse. He heard a commotion coming from the front of the courthouse, looked over his left shoulder and saw a group of nine or ten people. He observed that five or six people were kicking one male. He diverted his gaze to turn off his car engine and at that moment he heard three or four rapid gunshots. Looking back at the group, he saw one male standing over the victim with a gun in his right hand. Although he could not see the gunman well enough to identify him, he noted that he was a black male, with facial hair in the sideburn area and short dreadlocks. Steskla did not see that person actually fire the gun. The victim, Donte Jones, was found to have two gunshot entry wounds to his left shoulder

area and two exit wounds on the front side of his body. Those injuries were fatal.

Following the initial police investigation, Jermaine Reese, Mark Montgomery, John Weaver and Elliot Walker were charged in the incident. The state prosecuted Jermaine Reese, the defendant's cousin, as a principal and the sole shooter of the victim. Jermaine Reese was acquitted of all charges following a jury trial (Reese trial).

In August, 1999, after the Reese trial, the state police took a written statement from James Lindsay that implicated the defendant as the person who had shot Jones. In March, 2000, Walker gave a written statement to the state police, also implicating the defendant as the shooter.

Thereafter, the defendant was arrested and charged with murder in violation of § 53a-54a (a), assault in the first degree in violation of General Statutes § 53a-59 (a) (5), two counts of using a firearm in the commission of a class A or B felony in violation of General Statutes § 53-202k, assault in the third degree in violation of General Statutes § 53a-61 (a) (1), and conspiracy to commit murder and assault in the first degree. At trial, the state filed a substitute information charging the defendant with murder, assault in the first degree and assault in the third degree.

In addition to the testimony of Steskla and Harrell, the state called Walker, who testified that on August 10, 1998, he went to the courthouse where he saw Jermaine Reese, the defendant, Montgomery, Weaver and others, all individuals he knew. He saw Jones exit the courthouse and walk down the stairs, and he saw Weaver grab him. He observed Weaver drag Jones, the victim, down the steps, then pull him into the street where Weaver and Jermaine Reese punched and kicked Jones. Walker then saw Tyrone Allen retrieve a silver gun from

a car and hand it to the defendant. At that point, Walker testified, he began to walk away and then he heard gunshots, but did not see who fired the gun.

Weaver testified that on the day of the incident, he went to the courthouse where he saw the defendant, Jermaine Reese, Walker, Jermaine Gray and others outside near the steps. He recalled that Jones attacked somebody and that everyone then started fighting. He acknowledged that he joined in. As Weaver ran from the scene, believing the sheriffs were on their way, he heard gunshots. Turning, he saw the defendant shooting the victim.

The defendant called Allen, who testified that the defendant had not been at the courthouse on the day in question, thus disputing Walker's testimony concerning his presence at the scene. Andrew Urbanovsky, a sheriff at the courthouse, testified that he did not recall seeing the defendant at the courthouse on the day in question. The defendant recalled Steskla, who testified that the gun was black and not silver, as claimed by Walker. Barrington Erskine, a witness to the altercation, testified that he did not see the defendant at the courthouse or participating in the fight. Additional facts will be set forth as necessary.

I

The defendant first claims that the court improperly prohibited him from presenting evidence to rebut the court's finding of probable cause at his probable cause hearing. We are not persuaded.

"We review evidentiary claims pursuant to an abuse of discretion standard." *State* v. *Pereira*, 72 Conn. App. 107, 117, 806 A.2d 51 (2002), cert. denied, 262 Conn. 931, 815 A.2d 135 (2003).

At the probable cause hearing, the defense alerted the court that the state previously had prosecuted the

defendant's cousin, Jermaine Reese, for the same offense. The state called Steskla and Harrell, whose probable cause testimony paralleled that later given during the trial. Additionally, Jermaine Reese testified that the defendant was at the courthouse on the day in question. The state also called Lindsay, who denied making any statement to the police implicating the defendant as Jones' shooter. In light of that testimony, the state submitted Lindsay's written statement for substantive purposes pursuant to *State* v. *Whelan*, 200 Conn. 743, 753, 513 A.2d 86, cert. denied, 479 U.S. 994, 107 S. Ct. 597, 93 L. Ed. 2d 598 (1986). In the statement, Lindsay asserted that a couple of weeks after the shooting, while he was using drugs with the defendant, the defendant told him that he had been the gunman in the courthouse shooting.

On the basis of the state's evidence and once the court determined that probable cause existed, the court asked the defendant whether he had any offer of proof. At that juncture, defense counsel indicated that he wanted to offer "the statement of Mr. Jermaine Gray concerning the identification of Mr. Jermaine Reese as the killer in this case and also the court's finding with respect to the believability of that testimony."[2]

The portion of Jermaine Gray's testimony in the Jermaine Reese trial that the defendant sought to introduce was Gray's testimony during the probable cause hearing from the earlier trial. In that testimony, Gray stated that

---

[2] In his principal brief, the defendant asserts that he also sought to introduce trial transcripts from Jermaine Reese's trial in which "the state . . . argued that Jermaine Reese had been the principal and sole shooter of the victim." Assuming that the defendant is claiming on appeal that he attempted to introduce arguments made by the state in the Jermaine Reese trial to rebut the finding of probable cause, we find nothing in the record that discloses any such offer. In any case, for reasons we will discuss, even if the defendant had offered arguments made by the state in an earlier trial for the same offense, such a proffer would have been legally insufficient to rebut a probable cause finding.

he observed Jermaine Reese shoot Jones. Although that testimony conflicts with testimony that the defendant was the shooter, it did not rebut Lindsay's statement that the defendant told him he had shot Jones. It also did not rebut the probable cause testimony of Steskla, Harrell or Jermaine Reese. On that basis, we conclude that the court did not abuse its discretion in declining to admit the prior trial testimony of Jermaine Gray as rebuttal evidence at the probable cause hearing.

## II

The defendant's second claim is that the court improperly prohibited the defendant from introducing statements made by the state at the trial of Jermaine Reese and the long form information utilized by the state in that matter. We will review only the portion of the claim that relates to the defendant's contention that the long form information utilized by the state in the Jermaine Reese trial should have been admitted as an admission of a party opponent.[3]

The defendant's claim has two aspects. To prevail, the defendant must argue successfully that the state is a "party opponent" for purposes of the rule permitting an admission of a party's opponent pursuant to Connecticut Code of Evidence § 8-3 and that the informa-

---

[3] As to the statements made by the prosecutor at the Reese trial, the defendant's claim is not adequately particularized for our review. Our review of the record reveals that the defendant sought to introduce "the statements of the state with respect to the fact that Jermaine Reese was the murderer and shooter of Donte Jones." As to the identification of those statements, the defendant refers in his brief to the transcript of the Jermaine Reese trial with the apparent view that we should search that transcript to make our own determination of what may be encompassed in the category of "statements of the state." That we will not do. Without an adequate identification of the particular statements the defendant wanted to introduce, we will not unilaterally search the record to find those that may or may be pertinent to the defendant's claim. See *Gold* v. *University of Bridgeport School of Law*, 19 Conn. App. 379, 383–84, 562 A.2d 570, cert. denied, 213 Conn. 801, 567 A.2d 832 (1989).

tion is relevant evidence, i.e., that it is probative in this case. Because the defendant must establish both parts, if his analysis is flawed in either respect, the claim fails. Conversely, to assess his claim adequately, we need not discuss both parts of it if either of its parts is unavailing.[4]

As an initial matter, we review a court's decision to admit or to exclude evidence under a deferential standard, i.e., whether the court's ruling was an abuse of discretion. Absent a clear and prejudicial abuse of discretion, the court's ruling will be affirmed. *State* v. *Pereira*, supra, 72 Conn. App. 117. Here, the court did not abuse its discretion in excluding the information from the prior case as evidence in this matter.

We agree with the decision of the court to exclude the information, not on the basis that the state is not a party for any purposes in a criminal prosecution, but because the information was not probative. In short, the information fails the test of relevance. In support

[4] Although we do not reach the question of whether in a criminal matter the state is a "party" for purposes of application of the rule concerning admissions of a party opponent, we are aware that the Supreme Court in *State* v. *Rodriguez*, 180 Conn. 382, 397, 429 A.2d 919 (1980), held that the state is not a party for purposes of allowing evidence of a judicial admission. In affirming the exclusion of the state's answer to an interrogatory offered as a judicial admission, the court opined, "Moreover, in a criminal prosecution, the state is unlike a party to a civil action with respect to judicial admissions. This is so because the state is not an actor in the transaction or event giving rise to the prosecution as is a party to a civil action, but only exercises the public's power to vindicate its criminal laws." Id.; see also *State* v. *Jones*, 50 Conn. App. 338, 352, 718 A.2d 470 (1998), 248 Conn. 915, 734 A.2d 568 (1999). Although our courts have not ruled on whether, in a criminal prosecution, the state can be considered a party for the purpose of offering a statement of a party opponent pursuant to § 8-3 of the Connecticut Code of Evidence, we note with interest that in a federal prosecution, a bill of particulars from a previous prosecution espousing a theory different from the government's present theory may be admitted as an evidentiary admission. See *United States* v. *GAF Corp.*, 928 F.2d 1253, 1260 (2d Cir. 1991). As we will discuss, however, in admitting a document such as a statement of a party opponent, the federal courts have relaxed the threshold evidentiary requirement of relevance.

of his claim of admissibility, the defendant cites the federal interpretation of a parallel evidentiary rule.[5] Cf. *United States* v. *GAF Corp.*, 928 F.2d 1253, 1260 (2d Cir. 1991); *United States* v. *McKeon*, 738 F.2d 26 (2d Cir. 1984). In *McKeon* and *GAF Corp.*, the United States Court of Appeals for the Second Circuit observed that in ruling on the admission of a statement of a party opponent, the rules of relevancy are relaxed. Commenting on the applicable federal evidentiary rule, Fed R. Evid. 801 (d) (2), the court in *GAF Corp.* stated: "Moreover, as explained in *McKeon*, the admissions rule is distinct from normal evidentiary rules relating to relevancy. . . . [I]t is in some respects an exception to the general proposition that probative value and reliability are the touchtone of the law of evidence where non-privileged matters are concerned . . . . Although the reasons for relaxing the relevancy requirements for admissions are not clear, '[i]n all probability, these aspects of the rule are derived vestigially from an older, rough and ready view of the adversary process which leaves each party to bear the consequences of its own acts . . . .'" (Citations omitted; internal quotation marks omitted.) *United States* v. *GAF Corp.*, supra, 1261.

Although Connecticut's evidentiary rule, Connecticut Code of Evidence § 8-3 is, in most respects, a state

[5] Section 801 (d) (2) of the Federal Rules of Evidence provides in relevant part that a statement is not hearsay if: "The statement is offered against a party and is (A) the party's own statement, in either an individual or a representative capacity or (B) a statement of which the party has manifested an adoption or belief in its truth, or (C) a statement by a person authorized by the party to make a statement concerning the subject, or (D) a statement by the party's agent or servant concerning a matter within the scope of the agency or employment, made during the existence of the relationship . . . ."

Section 8-3 (1) of the Connecticut Code of Evidence provides in relevant part: "A statement that is being offered against a party and is (A) the party's own statement, in either an individual or a representative capacity, (B) a statement that the party has adopted or approved, (C) a statement by a person authorized by the party to make a statement concerning the subject . . . ."

counterpart to Fed. R. Evid. 801 (d), it is not in every aspect identical. Significantly, we have no jurisprudence relaxing the requirement of relevancy for the admissibility of such statements. To the contrary, in Connecticut our evidentiary rule regarding the admission of statements of a party opponent includes a threshold requirement that such statements must be "relevant and material to issues in the case." (Internal quotation marks omitted.) *State* v. *Woodson*, 227 Conn. 1, 15, 629 A.2d 386 (1993). Similarly, "[s]tatements made out of court by a party-opponent are universally deemed admissible when offered against him . . . *so long as they are relevant and material to issues in the case.*" (Citation omitted; emphasis added; internal quotation marks omitted.) *State* v. *Ferguson*, 260 Conn. 339, 357–58, 796 A.2d 1118 (2002).

The question, then, is whether the state's information in the trial charging Reese with the murder of Jones is probative as evidence in the present prosecution in which the state charged the defendant with the identical crime. We believe it is not. "Relevant evidence is evidence that has a logical tendency to aid the trier in the determination of an issue. . . . One fact is relevant to another if in the common course of events the existence of one, alone or with other facts, renders the existence of the other either more certain or more probable. . . . Evidence is irrelevant or too remote if there is such a want of open and visible connection between the evidentiary and principal facts that, all things considered, the former is not worthy or safe to be admitted in the proof of the latter." (Internal quotation marks omitted.) *State* v. *Nunes*, 260 Conn. 649, 685–86, 800 A.2d 1160 (2002). Here, the long form information the defendant sought to introduce had no logical tendency to aid the trier in the determination of whether the state had met its burden of proving the defendant's criminal culpability. In fact, it is a basic tenet of criminal prosecu-

tion that neither the charging document nor any of counsel's argument may be considered by the jury as evidence. See D. Borden & L. Orland, 5 Connecticut Practice Series: Connecticut Criminal Jury Instructions (3d Ed. 2001) § 1.3. What the state could not utilize as evidence in the Reese trial should not, therefore, be available as evidence in the trial at issue here merely because it evinces a different, even inconsistent, theory of the case. Put succinctly, if a jury can not convict on the basis of the contents of the charging document, a later jury should not be invited to acquit on the basis that one charging document differs from another, even to the point that the two read together are incompatible.

Having determined that the information sought to be introduced by the defendant is not relevant evidence, we need not reach the question of whether the state is a "party opponent" for purposes of Connecticut Code of Evidence § 8-3 (1).

### III

The defendant's third claim is that the court improperly admitted a redacted version of a witness' statement that misled the jury and was fundamentally unfair. We disagree.

We note again that we "will disturb the court's evidentiary rulings only upon a showing that the ruling resulted in substantial prejudice or injustice to the defendant." (Internal quotation marks omitted.) *State* v. *McHolland*, 71 Conn. App. 99, 109, 800 A.2d 667 (2002).

The following additional facts are relevant to the discussion of the defendant's claim. As part of his defense, the defendant maintained that he was not present at the time of the shooting and, therefore, could not have been the shooter. The day that he was arrested for allegedly shooting the victim, August 11, 1999, his girlfriend, Charletta Bland, was with him. She was

arrested for unrelated reasons and gave a statement to the police in which she stated that the defendant had admitted to her that he had been at the scene of the shooting.

At trial, Bland denied giving the statement to the police, but agreed that the document proffered to her bore her signature. That document, a redacted version of Bland's statement to the police, was admitted into evidence pursuant to *State* v. *Whelan*, supra, 200 Conn. 753. The portion of the statement that was admitted detailed Bland's activities on the day of the shooting, and recited the defendant's admission that he was at the courthouse at the time of the shooting and had witnessed the shooting.

Objecting to the redaction, the defendant sought to introduce two of the redacted paragraphs in the statement pursuant to Connecticut Code of Evidence § 1-5.[6] They stated as follows:[7]

"I know in my heart that Reggie was not the one who shot the 'boy' because he would have told me. From the group that was there during the beat-down, Jermaine and LT are the ones who would have had the gun. Jermaine is always arguing with people and running his mouth, that's why he always loses his temper and gets

---

[6] Connecticut Code of Evidence § 1-5 provides: "(a) Contemporaneous introduction by proponent. When a statement is introduced by a party, the court may, and upon request shall, require the proponent at that time to introduce any other part of the statement, whether or not otherwise admissible, that the court determines, considering the context of the first part of the statement, ought in fairness to be considered contemporaneously with it.

"(b) Introduction by another party. When a statement is introduced by a party, another party may introduce any other part of the statement, whether or not otherwise admissible, that the court determines, considering the context of the first part of the statement, ought in fairness to be considered with it."

[7] Both the state and the defendant agreed that the third paragraph, which details the events leading the defendant's arrest on August 11, 1999, could be redacted.

angry all the time. I also know that 'LT' is crazy enough to shoot anybody out there in the street.

"I have talked to many people on the 'street' and they have told me that Jermaine was the one that shot the 'boy,' and that he got away with it."

The defendant claims that those two paragraphs should have been admitted because the redacted version of Bland's statement "misled the jury concerning her belief in the defendant's guilt." Her beliefs, however, were not material. Because the excluded paragraphs reflect only Bland's personal opinion and the opinion of "other people" concerning the probable guilt of the defendant, they were not probative. Their omission also did not render the admission of portions of the statement unfair. Nothing in the excluded portions contains a statement of fact that contradicts the admitted portions. They do not even address the issues of whether the defendant was present at the courthouse and whether he was a participant in the disturbance that led to the victim's death. It is clear from the record that the court assessed the defendant's proffer for fairness in accordance with the dictates of Connecticut Code of Evidence § 1-5. The court did not abuse its discretion in excluding the previously redacted portions of Bland's statement.

## IV

The defendant last claims that the court improperly admitted a photograph of him that was taken approximately six weeks prior to the incident at issue. We disagree.

At the outset, we set forth the standard of review in regard to photographic evidence. "[P]hotographic evidence is admissible where the photograph has a reasonable tendency to prove or disprove a material fact in issue or shed some light upon some material inquiry.

. . . [Moreover] [t]here is no requirement . . . that a potentially inflammatory photograph be essential to the state's case in order for it to be admissible; rather, the test for determining the admissibility of the challenged evidence is relevancy and not necessity. . . . Thus, although irrelevant evidence of [an inflammatory] character is inadmissible, [t]he [state], with its burden of establishing guilt beyond a reasonable doubt, is not to be denied the [ability] to prove every essential element of the crime by the most convincing evidence it is able to produce. . . . Accordingly, [a] potentially inflammatory photograph may be admitted if the court, in its discretion, determines that the probative value of the photograph outweighs the prejudicial effect it might have on the jury. . . . Furthermore, a trial court has broad discretion in weighing the potential prejudicial effect of a photograph against its probative value. . . . On appeal, we may not disturb . . . [the trial court's] finding absent a clear abuse of discretion." (Internal quotation marks omitted.) *State* v. *Dorans*, 261 Conn. 730, 757, 806 A.2d 1033 (2002).

Here, identification of the shooter was an issue. The state offered as evidence a photograph of the defendant, relative to a prior arrest, that had been taken by the Bridgeport police department on June 28, 1998, a little less than six weeks before the incident. The photograph was relevant to show the defendant's appearance during the summer of 1998. That was significant because there had been testimony concerning the shooter's facial characteristics, and there also had been evidence that the defendant's facial appearance was different during the trial from what it was at the time of the shooting.

The defendant objected to the introduction of a police photograph from his prior arrest, arguing that the jury might infer that he had a criminal record and was, therefore, more likely to have committed the charged crime than a person without a criminal record. See,

e.g., *State* v. *Woods*, 171 Conn. 610, 612–13, 370 A.2d 1080 (1976).

To avoid prejudice to the defendant, the court instructed the jury that the "police have many pictures of people. Simply because police have a person's picture does not mean that he has ever committed a crime before or since. So, please understand that there is no connotation of guilt of any kind simply because some pictures of the defendant were in the possession of the police." "It is to be presumed that the jury followed the court's . . . instructions unless the contrary appears." (Internal quotation marks omitted.) *State* v. *McIntyre*, 250 Conn. 526, 533, 737 A.2d 392 (1999). In light of the court's cautionary instruction to the jury and the probative value of the photograph, we find no abuse of discretion in the court's ruling admitting the photograph as demonstrative evidence.

The judgment is affirmed.

In this opinion the other judges concurred.