# ARLENE COUSINS ET AL. *v.* ALAN NELSON ET AL.
## (AC 24489)

Bishop, West and Dupont, Js.

Argued October 22, 2004—officially released February 22, 2005

*James M. Connolly*, with whom was *Brigid A. Connolly*, legal intern, for the appellant (named plaintiff).

*Charles W. Fleischmann*, for the appellees (defendants).

### Opinion

DUPONT, J. The plaintiff Arlene Cousins[1] appeals from the judgment of the trial court rendered in favor of the defendants, Alan Nelson and Bridgeport Internal Medicine and Gastroenterology Associates, in this medical malpractice action. The judgment followed the

---

[1] The plaintiff's husband, Nicholas Cousins, originally sought damages for loss of consortium but withdrew his claim during the trial. We therefore refer in this opinion to Arlene Cousins as the plaintiff.

court's denial of the plaintiff's motions to set aside the verdict and for a new trial. We affirm the judgment of the trial court.

The plaintiff claims on appeal that the court improperly (1) denied her request to admit into evidence an article cited in a footnote of an article that had been admitted as a full exhibit, (2) prohibited her from cross-examining the defendants' expert witness regarding the article cited in the exhibit, (3) prohibited the plaintiff from cross-examining the defendants' expert witness regarding his role as a witness in a separate medical malpractice case involving the defendants and (4) denied the plaintiff's motion to set aside the verdict. The first three claims are evidentiary in nature and are discussed together.

The plaintiff instituted this action seeking damages for injuries claimed to have been sustained as a result of the medical malpractice of the defendant physician, Nelson, a gastroenterologist, and the defendant medical group of which he is a member. Nelson performed a procedure on the plaintiff known as an endoscopic retrograde cholangiopancreatography (ERCP) to evaluate the plaintiff's bile duct system as well as an endoscopic sphincterectomy (ES), which utilizes an electric current to make an opening in the muscle that encircles the duct. Those procedures, both singularly and in combination, involve an inherent risk of pancreatitis. The plaintiff developed pancreatitis and associated conditions. She alleged that the medical procedures Nelson performed violated the applicable standard of care because they were not warranted or indicated by the plaintiff's history, by Nelson's findings or by test results. She also alleged that the medical procedures were the proximate cause of her injuries. Nelson claimed that the procedures were appropriate and warranted. A central issue at trial was what factors indicate that an ERCP should be performed and if the particular millimeter enlarge-

ment or dilation of the plaintiff's common bile duct warranted the performance of an ERCP.

## I

## EVIDENTIARY RULINGS

### A

### Standard of Review

The plaintiff's claims relating to the introduction of evidence through (1) expert witnesses, (2) an article cited in a footnote of a full exhibit and (3) testimony relating to another malpractice case to prove the violation by the defendants of the appropriate standard of care are challenges to evidentiary rulings of the court.

"It is well settled that the trial court's evidentiary rulings are entitled to great deference. . . . The trial court is given broad latitude in ruling on the admissibility of evidence, and we will not disturb such a ruling unless it is shown that the rulings amounted to an abuse of discretion." (Citation omitted.) *Pestey* v. *Cushman,* 259 Conn. 345, 368–69, 788 A.2d 496 (2002). Even if a court has acted improperly in connection with the introduction of evidence, reversal of a judgment is not necessarily mandated without a showing of harm. See *Rokus* v. *Bridgeport,* 191 Conn. 62, 70–71, 463 A.2d 252 (1983). In other words, the party claiming error also must prove that the outcome of the case would have been different were it not for the claimed error. *Meek* v. *Wal-Mart Stores, Inc.,* 72 Conn. App. 467, 496–97, 806 A.2d 546, cert. denied, 262 Conn. 912, 810 A.2d 278 (2002). Further, if the same proffered evidence that was excluded could have been admitted at a later time in the trial, any inference that the error affected the verdict would be negated. *Rokus* v. *Bridgeport,* supra, 71. We conclude that the court did not abuse its discretion in connection with any of its evidentiary rulings.

## B

## Admissibility of the Article Cited in the Defendants' Exhibit

We address first the plaintiff's claim that the court improperly denied the admission into evidence of an article cited in a footnote in an article previously admitted as defendants' exhibit H.[2] The plaintiff claims that the cited article should have been admitted pursuant to the rule of completeness, as codified in § 1-5 (b) of the Connecticut Code of Evidence,[3] or to counteract the defendant's alleged surprise tactics[4] or to test the credibility of the defendants' expert witness on cross-examination.[5]

---

[2] The defendants argue that the record is inadequate for review of the claim because the plaintiff never had the cited article marked for identification. Although the failure to mark an exhibit for identification ordinarily precludes appellate review of its exclusion; *Carpenter* v. *Carpenter*, 188 Conn. 736, 745, 453 A.2d 1151 (1982); an adequate substitute identification exists here in the offer of proof of the contents of the cited article that was made by the plaintiff in the absence of the jury, and the article also was attached to the plaintiff's subsequent motion to set aside the verdict. See *Plawecki* v. *Angelo Tomasso, Inc.*, 1 Conn. App. 48, 49–50 n.3, 467 A.2d 944 (1983), cert. denied, 192 Conn. 801, 470 A.2d 1218 (1984).

[3] Connecticut Code Evidence § 1-5 provides in relevant part: "Remainder of Statements . . . (b) Introduction by another party. When a statement is introduced by a party, another party may introduce any other part of the statement, whether or not otherwise admissible, that the court determines, considering the context of the first part of the statement, ought in fairness to be considered with it."

[4] Connecticut Code of Evidence § 4-3, titled, "Exclusion of Evidence on Grounds of Prejudice, Confusion or Waste of Time," provides: "Relevant evidence may be excluded if its probative value is outweighed by the danger of unfair prejudice or surprise, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time or needless presentation of cumulative evidence."

[5] The plaintiff does not rely on the learned treatise exception to the hearsay rule, as stated in § 8-3 (8) of the Connecticut Code Evidence, to argue that the article cited in footnote nine of the defendants' exhibit H should have been admitted.

Section 8-3, titled, "Hearsay Exceptions: Availability of Declarant Immaterial," provides in relevant part: "The following are not excluded by the hearsay rule, even though the declarant is available as a witness . . . (8) Statement in learned treatises. To the extent called to the attention of an

Testifying as to the relevant standard of care, and making repeated reference to "the literature," the plaintiff's expert witness, Jeffrey L. Ponsky of the Cleveland Clinic Foundation,[6] stated that an ERCP was not indicated in this case, in part, because the plaintiff's common bile duct was at "the upper limits of normal" and that the "indications for the performance of an ERCP in the preoperative period would have included . . . perhaps a massively dilated bile duct on ultrasound, and I'm saying up to fifteen millimeters. Certainly, nothing of the size here." On cross-examination, Ponsky indicated that he was aware of nothing in the relevant medical literature stating that dilation of the common bile duct to eight millimeters is an indication that an ERCP should be performed. On cross-examination, the defendants showed Ponsky an article, published by the Cleveland Clinic Foundation in 2002 and written by a surgeon there, that clearly stated that dilation of the common bile duct of eight millimeters or greater is an indication for an ERCP. Ponsky testified that he disagreed with the conclusions stated in that article. The defendants sought to introduce into evidence the relevant portions of the article, at which point the plaintiff indicated that she did not have any objection to admitting the article

expert witness on cross-examination or relied on by the expert witness in direct examination, a statement contained in a published treatise, periodical or pamphlet on a subject of history, medicine, or other science or art, recognized as a standard authority in the field by the witness, other expert witness or judicial notice."

As the court correctly noted, the witness, Robert S. Rosson, through whom the plaintiff intended to introduce the cited article, had never seen, read or relied on it. It, thus, could not be introduced as a learned treatise because there was no compliance with the provisions of § 8-3 (8), nor could it be used to attack the witness' credibility because nothing in his testimony related to the article. Furthermore, it could not be used to attack the substance of his testimony. See *Harlan* v. *Norwalk Anesthesiology, P.C.*, 75 Conn. App. 600, 607, 816 A.2d 719, cert. denied, 264 Conn. 911, 826 A.2d 1155 (2003).

[6] Ponsky is the director of surgical endoscopy at the Cleveland Clinic Foundation in Cleveland, Ohio.

in its entirety into evidence. The court admitted the article as defendants' exhibit H.

Subsequently, after Ponsky returned to Ohio, the plaintiff sought to introduce the article cited in a footnote of the defendants' exhibit H, claiming that it was contrary to the opinion expressed in exhibit H. She offered the cited article when an expert witness for the defendants, Robert S. Rosson, was testifying, and again, by a separate offer of proof. The court denied both offers. The cited article was written in 1996 and published in the American Journal of Gastroenterology. It was not offered during redirect examination of Ponsky. The plaintiff argues that the cited article should have been placed into evidence in order to avoid misleading the jury. She argues that the jury should have been permitted to consider the expert testimony of Ponsky in light of the cited article, which, the plaintiff maintains, completely contradicts the defendants' exhibit H.

The plaintiff's chief argument is that § 1-5 (b)[7] of the Connecticut Code of Evidence permits the introduction of the article as a statement during the plaintiff's cross-examination of Rosson. Section 1-5 (b) applies to statements, and its purpose is to "ensure that statements placed in evidence are not taken out of context. . . . This purpose also demarcates the rule's boundaries; a party seeking to introduce selected statements under the rule must show that those statements are, in fact, relevant to, and within the context of, an opponent's offer and, therefore, are part of a single conversation." (Citation omitted.) *State* v. *Castonguay*, 218 Conn. 486, 497, 590 A.2d 901 (1991). "Although the cases upon which subsection (b) is based deal only with the admissibility of oral conversations or statements, the rule logically extends to written and recorded statements.

---

[7] We are concerned with subsection (b) rather than subsection (a) of § 1-5 of the evidence code because (a) pertains to contemporaneous statements.

Thus, like subsection (a), subsection (b)'s use of the word 'statement' includes oral, written and recorded statements. In addition, because the other part of the statement is introduced under subsection (b) for the purpose of putting the first part into context, the other part need not be independently admissible." Conn. Code Evid. § 1-5, commentary, subsection (b); see *State* v. *Paulino*, 223 Conn. 461, 468–69, 613 A.2d 720 (1992); *State* v. *Castonguay*, supra, 496; cf. *Starzec* v. *Kida*, 183 Conn. 41, 47 n.6, 438 A.2d 1157 (1981). The plaintiff asks us to extend the meaning of the word "statement" to include learned treatises claimed to be "a part of" another treatise that previously was admitted into evidence. We are aware of no appellate authority in Connecticut extending the scope of § 1-5 (b) of the Connecticut Code Evidence to permit the admission of a learned treatise as a "part of" a different, independent learned treatise written by a different author.

In this case, the defendants sought to impeach Ponsky's credibility by challenging his knowledge of the relevant medical literature. Specifically, the defendants attempted to discredit Ponsky's testimony that an eight millimeter dilation, on ultrasound, of the common bile duct was not a factor predicting common bile duct stones and, thus, not an indication for the performance of an ERCP. The defendants achieved that result by confronting Ponsky with an article that stated that an eight millimeter dilation *is* an indication for the performance of an ERCP. Subsequently, during the cross-examination of Rosson, the plaintiff sought to introduce an article cited in the defendants' article. The defendants objected, noting that the plaintiff had failed to lay a proper foundation for the introduction of a learned treatise, and the court sustained the objection. In her offer of proof outside the presence of the jury, the plaintiff argued that the cited article should be admitted

either under the rule of completeness or to remedy the defendants' unfair surprise tactics.

In order for § 1-5 (b) to apply in this case, we must conclude that a learned treatise is a "statement," given the facts of this case, within the meaning of § 1-5. First, we note that neither Ponsky nor Rosson wrote or contributed to the writing of the defendants' exhibit H or to the cited article. Nothing, therefore, in the cited article can be fairly characterized as a "statement" or a "partial statement" by Ponsky or Rosson, or by the author of exhibit H. All of the Connecticut cases of which we are aware concern the introduction of other statements made by witnesses prior to their in-court statements that ought to be "in fairness" considered as well as the in-court statements of the witnesses. See *State* v. *Jackson*, 257 Conn. 198, 213, 777 A.2d 591 (2001); *State* v. *Hines*, 243 Conn. 796, 807, 709 A.2d 522 (1998) (statement to police by witness); *State* v. *Castonguay*, supra, 218 Conn. 496–97 (defendant's testimony in his prior trial); *State* v. *Reese*, 77 Conn. App. 152, 164–65, 822 A.2d 348 (statement by witness made prior to trial), cert. denied, 265 Conn. 910, 831 A.2d 252 (2003); *State* v. *Colon*, 71 Conn. App. 217, 233–35, 800 A.2d 1268 (statement by defendant to victim's mother), cert. denied, 261 Conn. 934, 806 A.2d 1067 (2002).

No case cited by the plaintiff allows the introduction of the text of a treatise cited in a footnote of another treatise previously introduced in evidence when the witness has authored neither the admitted treatise nor the cited treatise. The cited treatise was not a clarification of, or a deviation from, a prior statement by the same author. There is no authority for extending the scope of § 1-5 (b) to allow a battle of statements made in two different treatises by two different authors. Unlike every other decisional situation in which § 1-5 has been applied, the alleged "statement" here was an article written six years earlier by a person who was neither

a witness nor involved in the litigation. We conclude that, on the facts of this case, § 1-5 (b) is not applicable.

We now turn to the plaintiff's alternative argument for the introduction of the cited article. Relying on § 4-3 of the Connecticut Code of Evidence and *Hackling v. Casbro Construction of Rhode Island*, 67 Conn. App. 286, 292, 786 A.2d 1214 (2001), the plaintiff argues that because the defendants' exhibit H should have been excluded from evidence to prevent an allegedly unfair surprise, the article cited in exhibit H should have been admitted into evidence to counteract the allegedly unfair surprise. The plaintiff contends that the defendants neither provided a copy to the plaintiff nor premarked for identification exhibit H as an exhibit that the defendants intended to use at trial, despite a civil jury trial management order requiring such premarking. The plaintiff claims that the defendants intentionally used exhibit H to surprise both the plaintiff's counsel and Ponsky.[8]

In this case, when the defendants' exhibit H was introduced into evidence, no claim of surprise was made by the plaintiff, and no objection was made to its introduction as a full exhibit. While the trial was still underway, the plaintiff's counsel read the article cited in footnote nine of exhibit H, but did not seek a continuance in order to introduce it as a learned treatise through another gastroenterologist more readily available than Ponsky, who had returned to Ohio. We note that the defendants' exhibit H was not introduced by the defendants during their case, but during the plaintiff's case. Furthermore, in the civil jury trial manage-

[8] The plaintiff also claims that Nelson "surprised" her by testifying contrary to his pretrial admission regarding the diameter of the scope used in the medical procedures at issue. Any prejudice relating to the failure of Nelson to stay true to his admission was countered by the court's instruction to the jury that his admission controlled the jury's deliberations, regardless of his trial testimony.

ment report, the parties reserved their rights to introduce additional exhibits depending on the evidence introduced by the other parties. The testimony of Ponsky could have been considered evidence that invoked the right of the defendants to introduce an exhibit that was not previously disclosed to the plaintiff.

In *Hackling* v. *Casbro Construction of Rhode Island*, supra, 67 Conn. App. 292, unlike this case, the trial court found that a disputed piece of documentary evidence should have been given to the opposing party earlier in the case. When a party has been less than candid by manufacturing its cross-examination as a vehicle to introduce a document that should have been produced earlier, in an apparent effort to surprise the opposing party and to discredit the latter's expert witness, the withholding constitutes a litigation strategy featuring surprise that is not tolerated by the courts. Id., 292–93. The court in this case made no such findings, and we conclude that *Hackling* is not controlling. We do not disturb the court's exercise of discretion to exclude the article cited in the defendants' exhibit H.

C

Cross-examination of the Defendants' Expert Witness

The plaintiff next claims that the court improperly precluded her from cross-examining the defendants' expert concerning the article cited in the defendants' exhibit. Arguing that because the court admitted the Cleveland Clinic Foundation article into evidence as a full exhibit, and because Rosson testified that he agreed with that article's conclusion, the plaintiff contends that the article cited in the Cleveland Clinic Foundation article was a proper subject of cross-examination in order to test the credibility of Rosson. The plaintiff further contends that "the foundation requirements that permit introduction of or reference to treatises or jour-

nal articles should not apply in this context." We do not agree.

The plaintiff contends that she should have been permitted to cross-examine Rosson, who neither read the article cited in the exhibit nor acknowledged it as a standard authority, regarding the conclusions stated in that article so as to test his credibility. The plaintiff cites no authority in support of that proposition. In fact, the rule in this state is quite the opposite: "In the cross-examination of experts, extracts from treatises either *relied on by the expert* on direct or *recognized by the expert as authoritative* may be used in questions to test the expert's qualifications and opinion." (Emphasis added.) C. Tait, Connecticut Evidence (3d Ed. 2001) § 7.11.2, p. 539; *Kaplan* v. *Mashkin Freight Lines, Inc.*, 146 Conn. 327, 330–31, 150 A.2d 602 (1959); *State* v. *Wade*, 96 Conn. 238, 250–51, 113 A. 458 (1921); see also *Harlan* v. *Norwalk Anesthesiology, P.C.*, 75 Conn. App. 600, 605, 816 A.2d 719, cert. denied, 264 Conn. 911, 826 A.2d 1155 (2003).

Rosson neither relied on the cited article during direct examination, nor recognized the article as authoritative. At no point during the trial was that article offered as a learned treatise. The court properly precluded the plaintiff, therefore, from cross-examining Rosson in connection with the substantive conclusions stated in the cited article, as if it were a learned treatise, under the guise of testing Rosson's credibility.

## D

### Cross-examination of the Defendants' Expert Witness Regarding Separate Malpractice Cases

The plaintiff next claims that the court improperly precluded her from cross-examining the defendants' expert concerning both his previous and simultaneous service as the defendants' expert in unrelated malprac-

tice cases. Relying on *Hayes* v. *Manchester Memorial Hospital*, 38 Conn. App. 471, 474–75, 661 A.2d 123, cert. denied, 235 Conn. 922, 666 A.2d 1185 (1995), the plaintiff argues that the court, in precluding her from cross-examining Rosson in connection with his service as an expert witness for the defendants in unrelated malpractice actions against them, improperly precluded her from eliciting facts that would have raised legitimate questions about the credibility and, specifically, the bias, of Rosson. We disagree.

Addressing that claim in its memorandum of decision denying the plaintiff's motion for a new trial, the court stated in relevant part that it "placed no restrictions on the plaintiff with respect to cross-examination of . . . Rosson as to any personal relationships between the witness and [Nelson] or [a partner of Nelson]. The potential prejudice arising from reference to other malpractice claims, with or without reference to the settlement or result of those claims, would outweigh any evidentiary value that such testimony [could] have and would conceivably open the door to lengthy testimony on collateral issues."

We agree with the court's finding that the evidence was unduly prejudicial. Although a basic and proper purpose of cross-examination of an expert is to test that expert's credibility; *Richmond* v. *Longo*, 27 Conn. App. 30, 38, 604 A.2d 374, cert. denied, 222 Conn. 902, 606 A.2d 1328 (1992); the plaintiff's proposed line of inquiry could not have revealed any potential personal stake on the part of Rosson in the outcome of the trial. See *Vasquez* v. *Rocco*, 267 Conn. 59, 69–70, 836 A.2d 1158 (2003) (court improperly precluded plaintiff from cross-examining expert witness concerning expert's substantial connection to defendant's insurance carrier); see also *Hayes* v. *Manchester Memorial Hospital*, supra, 38 Conn. App. 475–76 (court improperly precluded plaintiff from cross-examining defendant's

expert witness concerning pending malpractice action brought against expert). The court correctly concluded that the potential for prejudice outweighed any probative value of evidence regarding other malpractice claims brought against the same defendants and would have involved lengthy testimony on collateral issues. Furthermore, even if the court abused its discretion in excluding such cross-examination, the exclusion was unlikely to have affected the outcome. See *Musorofiti v. Vleck*, 65 Conn. App. 365, 385–87, 783 A.2d 36, cert. denied, 258 Conn. 938, 786 A.2d 426 (2001).

II

MOTION TO SET ASIDE VERDICT

The plaintiff's last claim on appeal is that the court improperly denied her motion to set aside the verdict. The plaintiff argues that the defendants' surprise tactics ambushed her on two fundamental questions of liability. Specifically, the plaintiff claims that the defendants' introduction of exhibit H and the defendants' initial equivocation on an issue that previously had been admitted in response to the plaintiff's request for admissions amounted to unfair surprise tactics designed to place her at a strategic disadvantage. We already have concluded that the defendants' use of exhibit H did not constitute unfair surprise. We also have concluded that the defendants' initial equivocation concerning a fact previously admitted in response to the plaintiff's request for admissions was cured by the court's instruction to the jury.[9]

Our standard of review of a court's denial of a motion to set aside the verdict is well settled. "[T]he proper appellate standard of review when considering the action of a trial court granting or denying a motion to set aside a verdict . . . [is] the abuse of discretion stan-

---

[9] See footnote 8.

dard. . . . In determining whether there has been an abuse of discretion, every reasonable presumption should be given in favor of the correctness of the court's ruling. . . . Reversal is required only where an abuse of discretion is manifest or where injustice appears to have been done. . . . We do not . . . determine whether a conclusion different from the one reached could have been reached. . . . A verdict must stand if it is one that a jury reasonably could have returned and the trial court has accepted." (Internal quotation marks omitted.) *Arnone* v. *Enfield,* 79 Conn. App. 501, 505–506, 831 A.2d 260, cert. denied, 266 Conn. 932, 837 A.2d 804 (2003).

The trial court did not abuse its discretion in denying the motion to set aside the verdict.

The judgment is affirmed.

In this opinion the other judges concurred.