******************************************************

The "officially released" date that appears near the beginning of each opinion is the date the opinion will be published in the Connecticut Law Journal or the date it was released as a slip opinion. The operative date for the beginning of all time periods for filing postopinion motions and petitions for certification is the "officially released" date appearing in the opinion.

All opinions are subject to modification and technical correction prior to official publication in the Connecticut Reports and Connecticut Appellate Reports. In the event of discrepancies between the advance release version of an opinion and the latest version appearing in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports, the latest version is to be considered authoritative.

The syllabus and procedural history accompanying the opinion as it appears in the Connecticut Law Journal and bound volumes of official reports are copyrighted by the Secretary of the State, State of Connecticut, and may not be reproduced and distributed without the express written permission of the Commission on Official Legal Publications, Judicial Branch, State of Connecticut.

******************************************************

# CAMILA COPPEDGE *v.* CURTIS TRAVIS
## (AC 40787)

Elgo, Bright and Beach, Js.

*Syllabus*

The plaintiff sought to recover damages from the defendant dog owner, pursuant to statute ([Rev. to 2013] § 22-357), for personal injuries she sustained when the defendant's dog bounded toward her, causing her to become startled and frightened, and to trip and fall as she tried to avoid the dog's advance. After a trial to the court, the court rendered judgment in favor of the plaintiff, from which the defendant appealed to this court. *Held* that the trial court properly determined that § 22-357 applied to the facts of this case: although that court did not use the words mischievous or vicious in describing the dog's behavior, it implicitly found that the dog's actions were not passive, innocent or involuntary, as the plaintiff testified that the defendant's unleashed dog bounded toward her in an exuberant manner, which fit within the definition of mischievous behavior; moreover, the court's finding on the element of proximate cause was not clearly erroneous, as the court found that the cause of the plaintiff's injuries was that the dog, with no leash attached, bounded ahead of the defendant, which caused the plaintiff to become startled and frightened, and to trip and fall as she tried to avoid the dog, and that the dog charging toward the plaintiff set in motion a chain of events that brought about her injuries, and the plaintiff's testimony that the dog stood over her after she fell supported a reasonable inference that the dog was close enough to the plaintiff when she fell as to be the proximate cause of the plaintiff's fall.

Argued December 5, 2018—officially released January 29, 2019

*Procedural History*

Action to recover damages for personal injuries sustained as a result of an attack by a dog owned by the defendant, brought to the Superior Court in the judicial district of Hartford and tried to the court, *Pittman, J.*; judgment for the plaintiff, from which the defendant appealed to this court. *Affirmed.*

*Kelly Grey*, for the appellant (defendant).

*Katherine L. Matthews*, for the appellee (plaintiff).

*Opinion*

BRIGHT, J. The defendant dog owner, Curtis Travis, appeals from the judgment of the trial court, rendered after a trial to the court, in favor of the plaintiff, Camila Coppedge, in this tort action, commenced pursuant to General Statutes (Rev. to 2013) § 22-357,[1] commonly known as the dog bite statute. On appeal, the defendant claims that (1) "[t]he evidence supports a finding that . . . § 22-357 does not apply as the dog's conduct was innocent," and (2) "[t]he evidence does not support a finding of proximate cause." We affirm the judgment of the trial court.

On the basis of the evidence presented at trial, the trial court found the following facts, which it set forth in a July 18, 2017 memorandum of decision. "On April 14, 2013, the plaintiff, who worked as a personal care assistant to elderly and disabled people, was carrying certain items into a motel room in East Hartford from a motor vehicle. The defendant, who was a long distance truck driver, was playing fetch with his dog on a grassy area next to the motel building. The defendant's dog was a one year old medium-sized Labradoodle named Lilly, with whom the defendant sometimes traveled. At the end of their exercise, the defendant and Lilly intended to return to the motel room where they were staying. Lilly, with no leash attached, bounded toward the motel ahead of the defendant.

"The plaintiff saw Lilly coming, became startled and frightened, and tripped and fell as she tried to avoid the dog's advance. Lilly never actually made physical contact with the plaintiff, but came close and stood over the plaintiff as the plaintiff lay on the ground.

"The defendant attempted to help the plaintiff up off the ground but words were exchanged about the presence of the dog. The defendant put Lilly in his motel room, away from the plaintiff, and helpfully called 911 for an ambulance.

"It was obvious that the plaintiff was injured. She had fallen backwards with her right arm and wrist under her body as she landed. The plaintiff was in great pain. She was taken by ambulance to Manchester Memorial Hospital where she was examined, x-rayed, and treated. Her right wrist was fractured in two places. The plaintiff was discharged from the hospital with a cast on her right wrist."

The court further found "that the exuberant, unleashed Lilly was a proximate cause of the plaintiff falling and injuring herself. There is no dispute that the defendant was, and still is, the owner and keeper of the dog. The court finds that the plaintiff has met her burden of proving all of the essential elements of a claim for damages under . . . § 22-357." Thereafter, on the basis of the evidence submitted on the question of damages, the court entered the following damages

award, subject to any applicable collateral source reduction: "[F]or physical and emotional pain and suffering, for loss of use of right hand and wrist for a temporary period during treatment and rehabilitation, and for current 8 [percent] permanent partial impairment which the court finds is related to this incident. Total: $45,000." This appeal followed.

The defendant claims that (1) "[t]he evidence supports a finding that . . . § 22-357 does not apply as the dog's conduct was innocent," and (2) "[t]he evidence does not support a finding of proximate cause." We are not persuaded.

We first address our standard of review. The defendant contends that "the standard of review in this case is limited to the standard of plain error." We disagree with this assertion and conclude that the plain error doctrine is not implicated in this case.[2] Rather, the defendant's claims involve a challenge to the court's factual findings. Accordingly, we review the defendant's claims under the clearly erroneous standard of review.[3]

"On appeal, it is the function of this court to determine whether the decision of the trial court is clearly erroneous. . . . This involves a two part function: where the legal conclusions of the court are challenged, we must determine whether they are legally and logically correct and whether they find support in the facts set out in the memorandum of decision; where the factual basis of the court's decision is challenged we must determine whether the facts set out in the memorandum of decision are supported by the evidence or whether, in light of the evidence and the pleadings in the whole record, those facts are clearly erroneous. . . . In a case tried before a court, the trial judge is the sole arbiter of the credibility of the witnesses and the weight to be given specific testimony. . . . On appeal, we will give the evidence the most favorable reasonable construction in support of the verdict to which it is entitled. . . . A factual finding may be rejected by this court only if it is clearly erroneous. . . .

"A finding of fact is clearly erroneous when there is no evidence in the record to support it . . . or when although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed." (Citations omitted; internal quotation marks omitted.) *Murphy* v. *Buonato*, 42 Conn. App. 239, 242, 679 A.2d 441 (1996), aff'd, 241 Conn. 319, 696 A.2d 320 (1997).

Section 22-357 provides in relevant part: "If any dog does any damage to either the body or property of any person, the owner or keeper . . . shall be liable for such damage, except when such damage has been occasioned to the body or property of a person who, at the time such damage was sustained, was committing a trespass or other tort, or was teasing, tormenting or

abusing such dog. . . .”

“Specifically . . . § 22-357 imposes strict liability on the owner or keeper of a dog for harm caused by the dog, with limited exceptions. [The] principal purpose and effect [of § 22-357] was to abrogate the common-law doctrine of scienter as applied to damage by dogs to persons and property, so that liability of the owner or keeper became no longer dependent upon his knowledge of the dog’s ferocity or mischievous propensity; literally construed the statute would impose an obligation on him to pay for any and all damage the dog may do of its own volition.” (Footnote omitted; internal quotation marks omitted.) *Giacalone* v. *Housing Authority*, 306 Conn. 399, 405, 51 A.3d 352 (2012); see *Granniss* v. *Weber*, 107 Conn. 622, 625, 141 A. 877 (1928).

The defendant first claims that § 22-357 does not apply to this case because the dog’s conduct was innocent. He argues that under *Atkinson* v. *Santore*, 135 Conn. App. 76, 78–79, 41 A.3d 1095, cert. denied, 305 Conn. 909, 44 A.3d 184 (2012) (plaintiff, who claimed that she may have been exposed to rabies virus from defendant’s dogs, could not sustain cause of action because statute does not extend to damage caused by dog’s merely passive, innocent, and involuntary behavior), a dog must be engaged in vicious or mischievous conduct for its owner to be held strictly liable for its actions. We conclude that the court properly applied § 22-357 to the facts of this case. Although the court did not use the word mischievous or vicious in describing the dog’s behavior, it found that the “exuberant” dog “bounded” toward the motel, where the plaintiff was removing things from her vehicle, which frightened the plaintiff. Accordingly, it implicitly found that the dog’s actions were not passive, innocent or involuntary.

Merriam-Webster’s Collegiate Dictionary (10th Ed. 2001) defines “mischievous” as: “Harmful, injurious . . . able or tending to cause annoyance, trouble, or minor injury . . . irresponsibly playful . . . .” The fact that the unleashed dog bounded toward her in an exuberant manner fits within the definition of mischievous. Accordingly, the defendant’s claim that the dog’s actions were innocent is without merit.

The defendant’s second claim contests the court’s finding on the element of proximate cause, which we also review under the clearly erroneous standard. See *Cammarota* v. *Guerrera*, 148 Conn. App. 743, 755, 87 A.3d 1134 (“The question of proximate causation . . . belongs to the trier of fact because causation is essentially a factual issue. . . . It becomes a conclusion of law only when the mind of a fair and reasonable [person] could reach only one conclusion; if there is room for a reasonable disagreement the question is one to be determined by the trier as a matter of fact.” [Internal quotation marks omitted.]), cert. denied, 311 Conn. 944,

90 A.3d 975 (2014).

The defendant argues that there was no evidence as to how far away the dog was from the plaintiff at the time she fell. He contends: "Certainly, if there [were] one hundred yards between [the dog] and the [plaintiff] when [the plaintiff] became startled and frightened, the causal nexus between the plaintiff's fall and the dog's conduct [would be] too attenuated to justify the imposition of liability." (Internal quotation marks omitted.) We disagree.

"The liability of the owner or keeper extends to all damage to the person which is proximately occasioned by the dog. . . . The statute is drastic, and its purport is that a person who owns a dog does so at his peril. . . . The active efficient cause that sets in motion a train of events which brings about a result without the intervention of any force started and working actively from a new and independent source is the proximate cause." (Citations omitted.) *Fellows* v. *Cole*, 4 Conn. Cir. Ct. 677, 680, 239 A.2d 56 (1967).

In *Malone* v. *Steinberg*, 138 Conn. 718, 723, 89 A.2d 213 (1952), our Supreme Court explained that for a defendant to be liable under the dog bite statute, it was sufficient for the plaintiff to establish that "the menacing attitude of the dog frightened the plaintiff and caused him to fall . . . even though it did not appear that the dog actually knocked him down." In that case, the parties had conceded that the dog did not come into actual contact with the plaintiff. Id. The court explained that contact was unnecessary under the statute and that "[t]he liability of a keeper extends to all damage to the person which is proximately occasioned by the dog."[4] Id.

In the present case, the court specifically found that the proximate cause of the plaintiff's injuries was that the dog, "with no leash attached, bounded toward the motel ahead of the defendant. The plaintiff saw Lilly coming, became startled and frightened, and tripped and fell as she tried to avoid the dog's advance. Lilly never actually made physical contact with the plaintiff, but came close and stood over the plaintiff as the plaintiff lay on the ground."

The plaintiff testified that as she was getting things out of her vehicle to bring into her daughter's motel room, which was approximately four feet from the vehicle, she saw the defendant and his unleashed dog across the yard. She further testified that the dog then "start[ed] galloping. Coming, coming, coming towards me. So [she] was coming. I was scared. So I was trying to turn and run, and that's when I fell on my hand on the ground. And the dog . . . came over to me." The plaintiff was afraid that the dog was going to bite her as she quickly ran toward her. She then indicated that the dog charging toward her was what caused her to

fall.

The plaintiff was asked if she had spoken with the East Hartford Police Department about the incident. She responded that she had spoken with them and informed them that "the dog was charging at me, and I was scared, and I was trying to run and I tripped and fell. And [the officer] asked me [if] the dog [was] on a leash, and I said no." She then indicated that she fell backward while trying to avoid the dog. The plaintiff was asked by her attorney whether the dog could have been going someplace else. The plaintiff responded: "No, [she] was coming. [She] was coming straight where I was, and when I was on the ground, [she] was right there." She also testified that after she fell to the ground, the dog "came close to me. . . . The only thing [was that the dog] just was over me."

On the basis of this evidence, the court reasonably could have found that the dog charging toward the plaintiff set in motion a chain of events that brought about her injuries. See *Fellows* v. *Cole*, supra, 4 Conn. Cir. Ct. 680; see also *Malone* v. *Steinberg*, supra, 138 Conn. 723. Furthermore, the plaintiff's testimony that the dog stood over her after she fell supported a reasonable inference that the dog was close enough to the plaintiff when she fell as to be the proximate cause of the plaintiff's fall. Accordingly, the court's finding of proximate cause was not clearly erroneous.

The judgment is affirmed.

In this opinion the other judges concurred.

[1] General Statutes (Rev. to 2013) § 22-357 was the version of the statute in effect when this incident occurred. The statute subsequently was amended by No. 13-223 of the 2013 Public Acts, which became effective October 1, 2013, and was amended several times thereafter. Hereinafter, all references to § 22-357 are to the 2013 revision unless otherwise indicated.

[2] "The plain error doctrine, which is codified at Practice Book § 60-5, is an extraordinary remedy used by appellate courts to rectify errors committed at trial that, although unpreserved, are of such monumental proportion that they threaten to erode our system of justice and work a serious and manifest injustice on the aggrieved party. . . . [I]t is a doctrine that this court invokes in order to rectify a trial court ruling that, although either not properly preserved or never raised at all in the trial court, nonetheless requires reversal of the trial court's judgment, for reasons of policy. . . . In addition, the plain error doctrine is reserved for truly extraordinary situations [in which] the existence of the error is so obvious that it affects the fairness and integrity of and public confidence in the judicial proceedings. . . . Plain error is a doctrine that should be invoked sparingly. . . . Implicit in this very demanding standard is the notion . . . that invocation of the plain error doctrine is reserved for occasions requiring the reversal of the judgment under review. . . . [Thus, an appellant] cannot prevail under [the plain error doctrine] . . . unless he demonstrates that the claimed error is both so clear and so harmful that a failure to reverse the judgment would result in manifest injustice." (Internal quotation marks omitted.) *Perricone* v. *Perricone*, 292 Conn. 187, 218–19, 972 A.2d 666 (2009).

[3] The plaintiff argues that we should decline to review the defendant's claims because this case does not implicate the plain error doctrine, and the plaintiff does not request review under any other doctrine or standard of review. Because the parties have briefed the issues, our record is adequate, and we understand the defendant's claims and arguments, in the exercise of our discretion, we will review his claims under the appropriate standard of review.

[4] The defendant attempts to distinguish this case from *Malone* because

there was no evidence that his dog was "barking, growling, salivating, or baring her teeth." Such behavior was not necessary, however, to prove that the dog acted mischievously. In fact, the defendant's counsel conceded during oral argument before this court that the defendant would be liable under the statute if the dog playfully had come into contact with the plaintiff and knocked her down.

———————————————————