******************************************************

The "officially released" date that appears near the beginning of each opinion is the date the opinion will be published in the Connecticut Law Journal or the date it was released as a slip opinion. The operative date for the beginning of all time periods for filing postopinion motions and petitions for certification is the "officially released" date appearing in the opinion.

All opinions are subject to modification and technical correction prior to official publication in the Connecticut Reports and Connecticut Appellate Reports. In the event of discrepancies between the advance release version of an opinion and the latest version appearing in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports, the latest version is to be considered authoritative.

The syllabus and procedural history accompanying the opinion as it appears in the Connecticut Law Journal and bound volumes of official reports are copyrighted by the Secretary of the State, State of Connecticut, and may not be reproduced and distributed without the express written permission of the Commission on Official Legal Publications, Judicial Branch, State of Connecticut.

******************************************************

# RACHEL WAGER *v.* ALEXANDRIA MOORE ET AL.
## (AC 40329)

Sheldon, Moll and Seeley, Js.

*Syllabus*

The plaintiff pedestrian sought to recover damages from the defendant for negligence for injuries she sustained when she was struck by a motor vehicle operated by the defendant. After the jury returned a verdict in favor of the defendant, the trial court denied the plaintiff's motion to set aside the verdict and rendered judgment in accordance with it, from which the plaintiff appealed to this court. *Held:*

1. The plaintiff could not prevail in her claim that the trial court erred when it denied her motion to set aside the verdict and for a new trial, which was based on her claim that there was insufficient evidence to support a finding of contributory negligence, the record having contained ample evidence that the plaintiff was negligent and that such negligence was a substantial factor in causing her injuries: there was evidence that the plaintiff was not in a designated crosswalk at the time of the collision, although there was a crosswalk approximately 750 feet down the roadway that would have been visible to the plaintiff and which she previously had used, that it was dark at the time of the collision and the plaintiff was wearing dark clothing, which the jury reasonably could have concluded would have made it difficult for the defendant to see her, that the plaintiff had "popped out" in front of the defendant's vehicle, that the area of the collision was flat and straight and that the plaintiff was intoxicated at the time of the collision, from which the jury could have inferred that the plaintiff walked or ran into the path of the defendant's vehicle and failed to yield the right-of-way to the defendant, that had the plaintiff been paying attention or keeping a proper lookout, she would have seen the defendant's vehicle in sufficient time to avoid the collision, and that the plaintiff was not exercising reasonable care to avoid harm to herself; moreover, the jury reasonably could have found that the plaintiff's negligence far exceeded the defendant's negligence, as there was evidence that the plaintiff had consumed approximately nine alcoholic drinks shortly before the collision and that she was captured on camera having difficulty standing and walking, whereas there was evidence that the defendant had consumed one alcoholic drink one and one-half hours before the collision and did not appear inebriated, and the defendant testified that she was not speeding and was paying attention to the roadway.

2. The plaintiff's claim that the trial court erred in instructing the jury on contributory negligence when such a charge was not supported by the evidence was unavailing; the record contained sufficient evidence of the plaintiff's contributory negligence to support the court's instruction, including evidence that the plaintiff was intoxicated, did not cross at a designated crosswalk and was wearing dark clothing when she suddenly appeared in the roadway.

3. The plaintiff could not prevail on her claim that the trial court improperly failed to instruct the jury on the relevant statutes governing the parties' respective duties, which was based on her claim that once the court instructed the jury on a pedestrian's duties pursuant to the applicable statutes (§§ 14-300b [a] and 14-300c [b]), its refusal to charge the jury on the duties that a driver owes to pedestrians pursuant to the applicable statutes (§§ 14-300d and 14-300i) constituted error: the court incorporated the duties of pedestrians identified in §§ 14-300b (a) and 14-200c (b) in its charge on contributory negligence, and the duties of drivers in relation to pedestrians identified in §§ 14-300d and 14-300i in its charge on negligence, the fact that the jury found the defendant 10 percent negligent indicated that the jury understood that the defendant owed a duty of care notwithstanding the plaintiff's negligence, and, therefore, the court adequately instructed the jury regarding the defendant's duty to exercise reasonable care; moreover, although the instructions were not a model of clarity, jury instructions need not be exhaustive, perfect or technically accurate, so long as they are correct in law, adapted to

the issues and sufficient for the guidance of the jury, and there was not a reasonable possibility the court's charge misled the jury.

4. The trial court did not abuse its discretion in denying the plaintiff's motions for a mistrial and to set aside the verdict, in which she claimed that she was prejudiced by the admission into evidence of certain improper hearsay evidence during the videotaped deposition testimony of the defendant's expert toxicologist, M, who commented in the video that the plaintiff had stated that she recalled walking across the roadway, even though the parties did not dispute that the plaintiff did not recall the accident and had agreed that M's comment would be excluded from the recording shown to the jury; immediately after the recording containing M's comment was played for the jury, the plaintiff's counsel corrected M, explaining that his statement was based on a police officer's mistaken interpretation of a comment by the plaintiff's mother, M admitted that he was mistaken, and the court gave the jury an instruction, which it was presumed to have followed, to ignore any comments indicating that the plaintiff remembered the collision shortly after the jury viewed the recording.

Argued February 5—officially released October 22, 2019

*Procedural History*

Action to recover damages for, inter alia, the defendants' negligence, and for other relief, brought to the Superior Court in the judicial district of New London; thereafter, the plaintiff withdrew the action as to the defendant Mitchell College; subsequently, the matter was tried to the jury before *Cole-Chu, J.*; thereafter, the court denied the plaintiff's motion for a mistrial; verdict for the named defendant; subsequently, the court denied the plaintiff's motion to set aside the verdict and rendered judgment in accordance with the verdict, from which the plaintiff appealed to this court; thereafter, the court, *Cole-Chu, J.*, denied the plaintiff's motion for articulation. *Affirmed.*

*Cynthia C. Bott*, with whom, on the brief, was *J. Craig Smith*, for the appellant (plaintiff).

*Laura Pascale Zaino*, with whom, on the brief, was *Lewis S. Lerman*, for the appellee (named defendant).

*Opinion*

SEELEY, J. The plaintiff, Rachel Wager, appeals from the judgment of the trial court, rendered after a jury trial, in favor of the defendant Alexandria Moore[1] in an action to recover damages for injuries that she sustained when she was struck by a vehicle operated by the defendant. On appeal, the plaintiff claims that the trial court erred when it (1) denied the plaintiff's motion to set aside the verdict on the basis of insufficient evidence to support the jury's finding of contributory negligence,[2] (2) instructed the jury on contributory negligence when such a charge was not supported by the evidence, (3) failed to instruct the jury on law essential to the plaintiff's claim regarding the defendant's negligence, and (4) denied the plaintiff's motion for a mistrial and later motion to set aside the verdict, which were based on the improper introduction of hearsay evidence against her at trial. We disagree and, accordingly, affirm the judgment of the trial court.

The jury was presented with the following evidence on which to base its verdict. At approximately 10:30 p.m. on February 4, 2011, the defendant was driving in the southbound lane on Montauk Avenue in New London, near the campus of Mitchell College, when her vehicle collided with the plaintiff, a student at the college who was crossing Montauk Avenue on foot when the collision occurred.[3] The plaintiff had started on the east side of the road and crossed the entire northbound lane before, walking westward, she entered the southbound lane and proceeded to the point where the collision occurred.

The plaintiff was not in a designated crosswalk at the time of the collision, although there was a marked crosswalk approximately 750 feet from the point of impact. The marked crosswalk was visible from the collision site, and a person crossing Montauk Avenue where the plaintiff attempted to cross it could have been able to use that marked crosswalk by walking northward to it on the sidewalk running on the east side of Montauk Avenue. The plaintiff was aware of the marked crosswalk and previously had used it to walk across Montauk Avenue. There were no cars parked on either side of Montauk Avenue at the time of the collision, but snowbanks then lined both sides of the street. At the time of the collision, the plaintiff was wearing a black jacket, dark jeans, and gold boots. The plaintiff was unable to remember anything about the collision or the period of time immediately before it.

The defendant testified that at the time of the collision she was driving to a friend's house located in New London. She further testified that at the time, she was not speeding and she was not distracted.[4] According to the defendant, she was paying extra attention to the roadway because she was looking for a street sign. The

defendant stated that the collision occurred when the plaintiff "popped out in front of [her car]." The defendant knew she had hit something because she heard a thump, so she stopped her vehicle. She did not realize her vehicle had hit a person until after she had exited the vehicle and looked back in the roadway. No one else witnessed the collision.

The plaintiff's accident reconstruction expert, Kristopher Seluga, testified that Montauk Avenue was flat and straight in the area of the collision and that the line of sight in that area was over 700 feet. He further testified that a person standing where he believed the plaintiff had been at the time of the collision would have been able to see the headlights of an oncoming vehicle prior to deciding whether or not to cross the road. Seluga also testified that the plaintiff should have been able to see the headlights of the defendant's vehicle and detect its presence on the roadway before the defendant would have been able to see the plaintiff.

As a result of the collision, the plaintiff was thrown forward and landed approximately 42 feet south of the point of impact. When the initial emergency personnel arrived at the scene, the plaintiff was unconscious. The plaintiff was transported to Lawrence & Memorial Hospital in New London. Later that evening, she was transferred to Yale New Haven Hospital via Life Star helicopter due to the severity of her injuries, which included multiple fractures, lacerations, and a traumatic brain injury.

A blood test performed at the hospital approximately thirty minutes after the collision revealed that the plaintiff had a blood alcohol level of 170 milligrams per deciliter, or .17 percent, which is equivalent to a .15 percent whole blood alcohol content measurement. Charles McKay, a toxicologist, testified that a .15 percent whole blood alcohol content measurement from a person of the plaintiff's size would represent more than nine standard alcoholic beverages consumed in a short period of time.[5] Earlier on the night of the collision, the plaintiff had shared a bottle of rum with six to eight friends in a dormitory at Mitchell College. The plaintiff appeared inebriated by 8:30 p.m., and she had trouble walking and needed help getting across campus. Footage from a surveillance camera on campus showed the plaintiff struggling to walk and stand on her own.

The plaintiff admitted that everything appears slower and her judgment sometimes is impaired when she is intoxicated. McKay testified that as blood alcohol concentration rises in a person, it can lead to errors in judgment and processing of thoughts, a decrease in motor skills, and an inability to pay attention to multiple stimuli. According to McKay, the plaintiff's blood alcohol concentration of .15 significantly would have impacted her cognitive functioning (i.e., her ability to perceive and respond) and her motor functioning.

Sergeant Lawrence Keating of the New London Police Department testified that while speaking with the defendant at the scene of the collision, he smelled alcohol on her breath. The defendant informed the police that she had consumed one alcoholic drink—a martini—approximately ninety minutes earlier. The police then administered a field sobriety test, which the defendant passed. One of the defendant's coworkers, who was with her shortly before the collision, testified that when she last saw the defendant she was acting normally.

In 2013, the plaintiff brought this action against the defendant. The operative amended complaint, which the plaintiff filed on November 13, 2015, alleged various injuries the plaintiff sustained as a result of the collision and that those injuries were caused by the negligence of the defendant in one or more of the following ways: she operated a motor vehicle while under the influence of an intoxicating liquor in violation of General Statutes § 14-227a (a); she operated a motor vehicle in a reckless manner in violation of General Statutes § 14-222; she operated a motor vehicle at an unreasonably high rate of speed in violation of General Statutes § 14-218a; she failed to keep a proper lookout; she failed to properly control her vehicle; she failed to brake; she failed to yield the right-of-way to a pedestrian already in the roadway; she failed to swerve to avoid striking the plaintiff; she operated her vehicle at an unreasonable speed under the circumstances; and she otherwise failed to drive as a reasonable and prudent driver under the same or similar circumstances.

On March 3, 2016, the defendant filed an answer to the plaintiff's operative complaint. The defendant also asserted, by way of special defense, that any injuries alleged by the plaintiff were proximately caused by her own negligence. Specifically, the defendant alleged that the plaintiff was negligent in one or more of the following ways: she failed to utilize the crosswalk in violation of General Statutes § 14-300b (a); she failed to yield the right-of-way to the defendant in violation of General Statutes § 14-300b (a); she left a place of safety and walked or ran into the path of the defendant's vehicle, causing an immediate hazard to herself, in violation of General Statutes § 14-300c (b); she "walked upon the roadway while under the influence of alcohol or drugs, rendering herself a hazard in violation of General Statutes [§ 14-300c (b)]"; she was inebriated, intoxicated, or impaired by the consumption of alcohol, and, as a result, walked or ran into the path of the defendant's vehicle; she failed to stop or wait for the defendant's vehicle to pass before entering the roadway, although by a reasonable and proper exercise of her faculties, she could and should have done so; she chose to cross the street while her ability to do so was impaired by the consumption of alcohol; she failed to keep a reasonable and proper lookout for vehicles on the roadway;

and she failed to be attentive to her surroundings, including vehicles on the roadway. The plaintiff filed a reply generally denying the allegations in the special defense.

Following a six day trial, the jury returned a verdict for the defendant and found the issues in the defendant's special defense in favor of the defendant. The jury found that the plaintiff "was more than 50 [percent]—specifically 90 [percent]—contributorily negligent in causing the subject accident on February 4, 2011, and her resulting injuries and damages, compared to the 10 [percent] total negligence of the defendant."[6] The trial court denied the plaintiff's subsequent motion to set aside the verdict and for a new trial. This appeal followed. Additional facts and procedural history will be set forth as necessary.

I

The plaintiff first claims that the trial court erred in denying her motion to set aside the verdict and for a new trial because the evidence was insufficient to support the jury's finding of contributory negligence. Specifically, the plaintiff argues that there was not sufficient evidence to remove the jury's finding that she was more than 50 percent negligent from the realm of speculation. The plaintiff argues that there was insufficient evidence from which the jury reasonably could have found that the plaintiff's alleged negligence was "causally connected to the collision." The plaintiff also contends that the defendant failed to present sufficient evidence from which the jury reasonably could have found that the plaintiff breached a duty of care as specified in the defendant's special defense. We disagree with the plaintiff and conclude that insofar as the jury's verdict was based on its finding of contributory negligence, the verdict was supported by sufficient evidence.

"A party challenging the validity of the jury's verdict on grounds that there was insufficient evidence to support such a result carries a difficult burden. In reviewing the soundness of a jury's verdict, we construe the evidence in the light most favorable to sustaining the verdict. . . . We do not ask whether we would have reached the same result. [R]ather, we must determine . . . whether the totality of the evidence, including reasonable inferences therefrom, supports the jury's verdict . . . . If the jury could reasonably have reached its conclusion, the verdict must stand." (Internal quotation marks omitted.) *Gagliano* v. *Advanced Specialty Care, P.C.*, 329 Conn. 745, 754–55, 189 A.3d 587 (2018).

"The . . . judgment [will be reversed] only if we find that the [fact finder] could not reasonably and legally have reached [its] conclusion. . . . We apply this familiar and deferential scope of review, however, in light of the equally familiar principle that the [defendant] must produce sufficient evidence to remove the [fact

finder's] function of examining inferences and finding facts from the realm of speculation." (Internal quotation marks omitted.) *Reyes* v. *Chetta*, 143 Conn. App. 758, 765, 71 A.3d 1255 (2013). "Moreover, with respect to the trial court's refusal to set aside the verdict, we accord great deference to the vantage of the trial judge, who possesses a unique opportunity to evaluate the credibility of witnesses. . . . The concurrence of the judgments of the [trial] judge and the jury . . . is a powerful argument for upholding the verdict." (Internal quotation marks omitted.) *Doe* v. *Hartford Roman Catholic Diocesan Corp.*, 317 Conn. 357, 371, 119 A.3d 462 (2015).

"[I]t is [the] function of the jury to draw whatever inferences from the evidence or facts established by the evidence it deems to be reasonable and logical. . . . Because [t]he only kind of an inference recognized by the law is a reasonable one . . . any such inference cannot be based on possibilities, surmise or conjecture. . . . It is axiomatic, therefore, that [a]ny [inference] drawn must be rational and founded upon the evidence. . . . However, [t]he line between permissible inference and impermissible speculation is not always easy to discern. When we infer, we derive a conclusion from proven facts because such considerations as experience, or history, or science have demonstrated that there is a likely correlation between those facts and the conclusion. If that correlation is sufficiently compelling, the inference is reasonable. But if the correlation between the facts and the conclusion is slight, or if a different conclusion is more closely correlated with the facts than the chosen conclusion, the inference is less reasonable. At some point, the link between the facts and the conclusion becomes so tenuous that we call it speculation. When that point is reached is, frankly, a matter of judgment. . . .

"[P]roof of a material fact by inference from circumstantial evidence *need not* be so conclusive as to *exclude every other hypothesis*. It is sufficient if the evidence produces in the mind of the trier a reasonable belief in the probability of the existence of the material fact. . . . Thus, in determining whether the evidence supports a particular inference, we ask whether that inference is so unreasonable as to be unjustifiable. . . . In other words, an inference need not be compelled by the evidence; rather, the evidence need only be reasonably susceptible of such an inference. Equally well established is our holding that a jury may draw factual inferences on the basis of already inferred facts. . . . Finally, it is well established that a [defendant] has the same right to submit a weak [special defense] as he has to submit a strong one." (Emphasis in original; internal quotation marks omitted.) *Procaccini* v. *Lawrence & Memorial Hospital, Inc.*, 175 Conn. App. 692, 716–17, 168 A.3d 538, cert. denied, 327 Conn. 960, 172 A.3d 801 (2017).

To prove contributory negligence, the defendant must prove that the plaintiff's negligence was a proximate cause of or a substantial factor in the resulting harm. See *Opotzner* v. *Bass*, 63 Conn. App. 555, 566, 777 A.2d 718 (court properly instructed jury that it must determine whether plaintiff's negligence was substantial factor in bringing about collision), cert. denied, 257 Conn. 910, 782 A.2d 134 (2001), and cert. denied, 259 Conn. 930, 793 A.2d 1086 (2002). Put another way, "the defendant must . . . prove by a fair preponderance of the evidence that the plaintiff was in fact negligent." *Hackling* v. *Casbro Construction of Rhode Island*, 67 Conn. App. 286, 294 n.4, 786 A.2d 1214 (2001).

In the present case, when the court instructed the jury, it stated in relevant part: "The defendant's special defense is that, if the plaintiff sustained any injuries or damages as alleged in her complaint, then said injuries or damages were proximately caused by her own carelessness and negligence at said time and place, in one or more of the following ways: One, she crossed the street at a place other than the available crosswalk and failed to yield the right-of-way to the defendant; two, she left a place of safety and walked or ran into the path of the defendant's vehicle, causing a hazard; three, she walked upon the roadway while under the influence of alcohol, rendering herself a hazard; four, she was inebriated, intoxicated, or impaired by the consumption of alcohol and, as a result, walked or ran into the path of the defendant's vehicle; five, she failed to keep a reasonable and proper lookout for vehicles on the roadway; six, she failed to be attentive to her surroundings, including vehicles in the roadway."

First, we address the plaintiff's assertion that there was insufficient evidence from which the jury reasonably could have found that her alleged negligence was "causally connected to the collision." Contrary to the plaintiff's contention,[7] we conclude that the record contains ample evidence that the plaintiff was negligent as alleged in each of the six specifications pleaded in the special defense, on which the trial court charged the jury, and that such negligence was a substantial factor in causing her injuries. Specifically, there was evidence that the plaintiff was not in a designated crosswalk at the time of the collision, although such a crosswalk was located approximately 750 feet down the road. The crosswalk would have been visible to the plaintiff from where she began to cross the roadway, and she was aware of that crosswalk, having used it previously.

Additionally, at the time of the collision, it was dark outside and the plaintiff was wearing dark clothing, which the jury reasonably could have concluded would have made it difficult for the defendant to see her. On the basis of the defendant's testimony that she never saw the plaintiff and that the plaintiff "popped out" in front of her vehicle, the jury reasonably could have

inferred that the plaintiff walked or ran into the path of the defendant's vehicle and that she failed to yield the right-of-way to the defendant.

Moreover, the jury heard extensive evidence—in the form of expert and lay testimony—of the plaintiff's intoxication at the time of the collision. The plaintiff's blood alcohol content was .15 percent approximately thirty minutes after the collision. An individual of the plaintiff's size would have had to consume nine standard alcoholic drinks over a short period of time immediately before her blood was drawn to reach this level of intoxication. The plaintiff admitted that when she is intoxicated, things appear slower to her and her judgment can be impaired. Indeed, friends of the plaintiff who observed her prior to the collision stated that she struggled to stand and to navigate campus.[8]

The plaintiff argues that intoxication alone does not constitute negligence and, therefore, the evidence of her intoxication is insufficient to support a finding of contributory negligence. Our Supreme Court has stated: "Even if [the jury] found [that the plaintiff] was intoxicated, that would not constitute contributory negligence as a matter of law. . . . [T]he mere fact that [the plaintiff] was intoxicated . . . would not prevent recovery but its importance in the case would be that if true it would strengthen the probability of the defendants' claim [of contributory negligence]." *Kupchunos* v. *Connecticut Co.*, 129 Conn. 160, 163, 26 A.2d 775 (1942); see also *Craig* v. *Dunleavy*, 154 Conn. 100, 105– 106, 221 A.2d 855 (1966) (concluding that trial court properly found that defendant failed to prove plaintiff's decedent was contributorily negligent because defendant presented no evidence other than plaintiff's intoxication in support of his claim). Unlike in *Craig*, where the only evidence of contributory negligence in the record was the intoxication of the plaintiff's decedent, in the present case the defendant did not rely exclusively on evidence of the plaintiff's intoxication in support of her claim of contributory negligence. *Craig* v. *Dunleavy*, supra, 105–106. There also was evidence that the plaintiff "popped out" into the roadway at night dressed in dark clothing. On the basis of this evidence, the jury reasonably could have concluded that the plaintiff, while intoxicated, "popped out" into the roadway at night dressed in dark clothing, thereby rendering herself a hazard. Similarly, the jury reasonably could have inferred that the plaintiff, while intoxicated, walked or ran into the path of the defendant's vehicle.

Moreover, in *Craig*, the defendant failed to offer evidence to indicate how the intoxication of the plaintiff's decedent contributed to the automobile accident at issue. *Craig* v. *Dunleavy*, supra, 154 Conn. 105–106. In the present case, there was circumstantial evidence that the plaintiff's intoxication contributed to the collision through her admission that when she is intoxicated her

judgment can become impaired. Further, on the basis of the expert testimony of the toxicologist, a jury reasonably could have determined that the level of her intoxication would have negatively impacted her ability to perceive and respond to a motor vehicle in the road due to a significant decrease in her cognitive functioning and motor skills. The evidence of the plaintiff's intoxication strengthened the probability that she was contributorily negligent rather than serving as per se evidence of her negligence.

Finally, there was evidence that Montauk Avenue was flat and straight in the area of the collision and that a person standing in that area would have been able to see an oncoming vehicle prior to deciding whether or not to cross the road. Thus, the jury reasonably could have concluded that had the plaintiff been paying attention or keeping a proper lookout, she would have seen the defendant's vehicle in sufficient time to avoid the collision.

On the basis of the evidence presented at trial, the jury reasonably could have found that the plaintiff was not exercising reasonable care to avoid harm to herself as alleged in each of the six specifications alleged in the special defense, as charged by the trial court, and as a result, her negligence was a substantial factor in bringing about her injuries.

Second, we address the plaintiff's claim that there was not sufficient evidence to remove from the realm of speculation the jury's finding she was more than 50 percent negligent. We conclude, to the contrary, that the evidence, taken in the light most favorable to sustaining the verdict, establishes that the jury reasonably could have found that the plaintiff's negligence far exceeded the defendant's negligence.

At trial, there was evidence that the plaintiff consumed approximately nine alcoholic drinks shortly before the collision and she was captured on a campus surveillance camera having difficulty standing and walking without assistance. The toxicologist testified that the plaintiff's blood alcohol content was .15 shortly after the collision and that this level of intoxication would have significantly impaired her ability to perceive and respond to her surroundings, negatively impacted her judgment, and resulted in decreased motor skills. By comparison, there was evidence that the defendant consumed one alcoholic drink, one and one half hours prior to the collision, and did not appear to be inebriated, as demonstrated by her successful completion of a field sobriety test shortly after the collision. The defendant testified that at the time of the collision she was not speeding and she was paying extra attention to the roadway. Additionally, the jury was presented with evidence that the plaintiff would have been able to see headlights from the defendant's vehicle before entering the roadway and before the defendant would

have been able to see the plaintiff, who was wearing dark clothing at the time.

Whether we would have reached a contrary conclusion regarding the relative negligence of the parties had we been seated as the jury is not relevant to our determination in this case. See, e.g., *Procaccini* v. *Lawrence & Memorial Hospital, Inc.*, supra, 175 Conn. App. 716 (it is not function of reviewing court to sit as seventh juror when considering claims of evidentiary sufficiency). Our inquiry is limited to whether the jury reasonably could have reached its finding on the basis of the evidence before it, including any inferences reasonably drawn therefrom. We conclude, on the basis of our review of the evidence introduced at trial, that the jury's finding that the plaintiff was more than 50 percent negligent was reasonably supported by the evidence.

II

The plaintiff's second claim is that the court erred in instructing the jury on contributory negligence because the instruction was not supported by the evidence presented at trial. We disagree.

The following additional facts are relevant to the resolution of this claim. On March 24, 2016, during the charge conference, the plaintiff's counsel objected to a proposed charge on contributory negligence, arguing that there was not sufficient evidence to support such a finding by the jury. The court overruled this objection and instructed the jury on contributory negligence.

"The standard we use in reviewing evidentiary matters, including the sufficiency of the evidence to submit a claim to the jury, is abuse of discretion. . . . Accordingly, great weight is given to the trial court's decision and every reasonable presumption is given in favor of its correctness. . . . We will reverse the trial court's ruling only if it could not reasonably conclude as it did. . . . Issues that are not supported by the evidence should not be submitted to the jury." (Internal quotation marks omitted.) *Villa* v. *Rios*, 88 Conn. App. 339, 346, 869 A.2d 661 (2005). "The trial court should not submit to the jury any issue that is foreign to the facts in evidence or for which no evidence was offered. . . . In reviewing a claim that there was insufficient evidence to support an instruction, the reviewing court must consider the evidence in the light most favorable to upholding the instruction." (Internal quotation marks omitted.) *State* v. *Morales*, 172 Conn. App. 329, 343, 160 A.3d 383, cert. denied, 327 Conn. 988, 175 A.3d 1244 (2017).

"It has long been recognized that it is the duty of a pedestrian to exercise reasonable care, not only to avoid known dangers, but to discover those to which his conduct might expose him, and to be watchful of his surroundings. . . . Drivers, however, are not held to as high a degree of care to anticipate the presence

of pedestrians in the roadway outside of crosswalks. . . . Indeed, [w]hile a pedestrian may ordinarily cross a street at any place, it is the law that in doing . . . so he is bound to exercise care commensurate to the increased danger incident to being in a place where pedestrians do not usually go, and, consequently, where drivers need not take the same precaution in anticipation of their presence that they are required to take at regular crossings." (Citations omitted; internal quotation marks omitted.) *Schupp* v. *Grill*, 27 Conn. App. 513, 518–19, 607 A.2d 1155 (1992). Even "having the right of way would not justify [a pedestrian] in being oblivious to the circumstances and failing to exercise care commensurate with the situation. . . . One who has the right of way is still under a duty to exercise reasonable care." (Citations omitted.) *Drobish* v. *Petronzi*, 142 Conn. 385, 387, 114 A.2d 685 (1955). It is for the trier of fact to determine if the pedestrian exercised "that amount of care as to lookout which a reasonably prudent person would have exercised under the same circumstances." *Labbee* v. *Anderson*, 149 Conn. 58, 61, 175 A.2d 370 (1961).

Similarly, "[t]he question of proximate causation . . . belongs to the trier of fact because causation is essentially a factual issue. . . . It becomes a conclusion of law only when the mind of a fair and reasonable [person] could reach only one conclusion; if there is room for a reasonable disagreement the question is one to be determined by the trier as a matter of fact." (Internal quotation marks omitted.) *Coppedge* v. *Travis*, 187 Conn. App. 528, 534, 202 A.3d 1116 (2019).

As discussed in part I of this opinion, the record contains sufficient evidence of each of the six specifications of the plaintiff's contributory negligence as charged by the trial court, including that the plaintiff did not cross at the designated crosswalk, she was wearing dark clothing when she suddenly appeared in the road, and she was intoxicated. See, e.g., *Schupp* v. *Grill*, supra, 27 Conn. App. 518 (more than sufficient evidence to support contributory negligence charge where decedent running on double yellow line in middle of unlighted road at night toward defendant's vehicle). On the basis of this evidence, construed in the light most favorable to upholding the instruction, we conclude that there was sufficient evidence to support the trial court's instruction to the jury on contributory negligence.

III

The plaintiff next claims that the court erred when it failed to instruct the jury on relevant statutes governing the parties' respective duties. Specifically, the plaintiff argues that once the court instructed the jury on a pedestrian's duties under General Statutes §§ 14-300b (a)[9] and 14-300c (b),[10] its refusal to charge the jury on the countervailing duties that a driver owes to pedestri-

ans on the roadway under General Statutes §§ 14-300d[11] and 14-300i[12] constituted error. We disagree.

The following additional facts are relevant to the resolution of this claim. On March 21, 2016, the plaintiff filed an amended request to charge regarding the defendant's special defense of contributory negligence. The plaintiff proposed that the court instruct the jury as to the defendant's specific claims of the plaintiff's negligence and then immediately instruct the jury that "[t]here [were] three provisions of the Connecticut General Statutes which address *the duty of a driver to avoid pedestrians* . . . ." (Emphasis added.) The plaintiff requested that the court read the text of §§ 14-300c (pedestrian use of road and sidewalks), 14-300d (operator of vehicle required to exercise due care to avoid pedestrian), and 14-300i (vehicle operator to exercise reasonable care when near vulnerable user on public way).

On March 24, 2016, during a charge conference, the plaintiff objected to the court instructing the jury on §§ 14-300b (a) and 14-300c (b), while excluding instructions on §§ 14-300d and 14-300i from the charge, stating: "I don't see a specific charge with regard to [§§] 14-300d or [14-300i], which . . . says that notwithstanding all of the foregoing sections that are actually being charged, [§§ 14-300b (a) and 14-300c (b),] that it doesn't excuse a driver who fails to use due care, and a driver who fails to use due care is still at fault. So at least . . . minimally, that principle should be charged." The plaintiff emphasized that §§ 14-300b, 14-300c, 14-300d, and 14-300i should be charged "in principle only." The court stated: "The reason I am not including [§ 14-300d or § 14-300i] is that, having removed the specific statutory references on the other items, I believe that . . . the law . . . in [§ 14-300d or § 14-300i is] . . . included in the other instructions. . . . Particularly, in the plaintiff's described claims."

Later on March 24, 2016, the court instructed the jury on negligence and contributory negligence. With regard to contributory negligence, the court instructed: "[T]he plaintiff, like the defendant, also had a duty to exercise the care which a reasonably prudent person would use under the circumstances. A plaintiff can be negligent if she does something which a reasonably prudent person would not have done under similar circumstances, or fails to do that which a reasonably prudent person would have done under similar circumstances."

The court went on to state six possible ways in which the defendant claimed that the plaintiff was contributorily negligent: "One, she crossed the street at a place other than the available crosswalk and failed to yield the right-of-way to the defendant; two, she left a place of safety and walked or ran into the path of the defendant's vehicle, causing a hazard; three, she walked upon the roadway while under the influence of alcohol, rendering

herself a hazard; four, she was inebriated, intoxicated, or impaired by the consumption of alcohol and, as a result, walked or ran into the path of the defendant's vehicle; five, she failed to keep a reasonable and proper lookout for vehicles on the roadway; six, she failed to be attentive to her surroundings, including vehicles in the roadway."

"Our review of the [plaintiff's] claim requires that we examine the [trial] court's entire charge to determine whether it is reasonably possible that the jury could have been misled by the omission of the requested instruction. . . . While a request to charge that is relevant to the issues in a case and that accurately states the applicable law must be honored, a [trial] court need not tailor its charge to the precise letter of such a request. . . . If a requested charge is in substance given, the [trial] court's failure to give a charge in exact conformance with the words of the request will not constitute a ground for reversal. . . . As long as [the instructions] are correct in law, adapted to the issues and sufficient for the guidance of the jury . . . we will not view the instructions as improper." (Internal quotation marks omitted.) *State* v. *Euclides L.*, 189 Conn. App. 151, 160–61, 207 A.3d 93 (2019); see also *State* v. *Campbell*, 328 Conn. 444, 528–29, 180 A.3d 882 (2018) (individual jury instructions not to be judged in artificial isolation or critically dissected in microscopic search for possible error, but reviewed in context of overall charge).

The plaintiff argues that the court "never instructed the jury in line with § 14-300d that the defendant-motorist would not be relieved of the duty to exercise due care to avoid the collision despite the alleged failure to utilize the crosswalk by the plaintiff-pedestrian." The plaintiff further claims that "[t]he jurors needed to be instructed that even if [the plaintiff] had a duty to cross the street at a particular place which was allegedly breached—despite that circumstance—the defendant . . . still had the duty to exercise reasonable care and would not be absolved of potential liability because of that circumstance."

In the present case, the court incorporated the duties of pedestrians identified in §§ 14-300b (a) and 14-200c (b) in its charge on contributory negligence. See part III of this opinion. Likewise, the court incorporated the duties of drivers in relation to pedestrians identified in §§ 14-300d and 14-300i in its charge on negligence. As requested by the plaintiff during the charge conference, the court did not reference these statutes. The court instructed the jury regarding the relevant common law elements of negligence, stating in part: "[E]ach driver of a motor vehicle has a duty to drive that vehicle in such a way as to avoid reasonably foreseeable harm to other people. Each driver of a motor vehicle has a duty to exercise reasonable care towards others whenever

the driver's actions, together with any reasonably foreseeable actions of others, make it likely that harm to another will result if the driver fails to exercise that reasonable care." The court went on to provide the jury with additional instructions on negligence as it related to the defendant's actions.

Moreover, contrary to the plaintiff's argument that the court failed to instruct the jury on a driver's duties in relation to pedestrians under §§ 14-300d and 14-300i, the court instructed the jury on these statutes in essence when it stated: "The law recognizes that a person's conduct can still be negligent if her conduct involves an unreasonable risk of harm when the conduct is combined with the foreseeable conduct of another person, such as the plaintiff stopping her car due to traffic, or someone, a driver, stopping a car due to traffic, or a force of nature." While this instruction did not conform precisely to the language proposed by the plaintiff, it is axiomatic that the court "need not tailor its charge to the precise letter of such a request." (Internal quotation marks omitted.) *State* v. *Euclides L.*, supra, 189 Conn. App. 161.

The plaintiff argues that the court's instructions failed to make clear that, even if the plaintiff was negligent in violating any of the pedestrian statutes, the defendant still had a continuing affirmative duty of care. The fact that the jury found the driver 10 percent negligent, however, indicates that the jury understood that the defendant owed the plaintiff a duty of care notwithstanding the plaintiff's negligence.

Mindful of our obligation to construe the court's charge as a whole, we conclude that the court adequately instructed the jury regarding the defendant's duty to exercise reasonable care. Furthermore, although the instructions at issue were not a model of clarity, we are cognizant of the fact that "[j]ury instructions need not be exhaustive, perfect or technically accurate, so long as they are correct in law, adapted to the issues and sufficient for the guidance of the jury." (Internal quotation marks omitted.) *Matthiessen* v. *Vanech*, 266 Conn. 822, 832, 836 A.2d 394 (2003). On the basis of the foregoing, we are not persuaded that there is any reasonable possibility that the trial court's charge misled the jury.

IV

The plaintiff's final claim is that the trial court erred in denying her motion for a mistrial and posttrial motion to set aside the verdict, which were based on the introduction of hearsay evidence against her toward the end of the trial during the videotaped testimony of the defendant's toxicology expert. Specifically, the plaintiff argues that "the defendant's introduction of [certain hearsay comments] . . . was highly prejudicial to [her] and deprived her of a fair trial" and that the trial court's

instruction relating thereto did not cure the prejudice.[13] We disagree.

The following additional facts and procedural history are relevant to the resolution of this claim. During the trial, the defendant presented testimony of Charles McKay, an expert toxicologist. McKay was deposed prior to trial, and a videotaped recording of his testimony was played for the jury during trial on March 23, 2016.

At one point in the deposition, McKay made comments that indicated that the plaintiff recalled the collision. Prior to trial, the parties agreed that these comments, which were based on hearsay, would be excluded from the recording that was shown to the jury. Throughout the trial, it was undisputed that the plaintiff did not recall the collision. When the recording was shown to the jury, however, it included McKay's comments indicating that the plaintiff recalled the collision as part of the following exchange between the plaintiff's counsel and McKay:

"Q. And you therefore have no idea . . . how long [the plaintiff] was in that street that evening before she was hit by [the defendant]?

"A. She said she was walking across the street, but I don't know how long she was in that process.

"Q. Where did she say she was walking across the street? Where did you get that from?

"A. It was from [the plaintiff's] deposition that she was walking across the street and she saw the light, [but] thought she could make it . . . across the street . . .

"Q. Okay, that was not in her deposition, doctor, with all due respect. You're getting that, again, from the police report based on a statement that her mother said she made in the hospital that was confused by the police. My question is did you ever hear an indication directly from [the plaintiff] as to what she was doing that night?

"A. Oh, in terms of her activities on the street, no, not in her deposition. She described several things she did back and forth with going to different friends' rooms and things like that, but she didn't recall the crash event itself."

Immediately after the recording was shown, the jury was excused. When the jury returned to the courtroom, the court instructed the jury as follows: "[T]here was a statement in the course of Dr. McKay's testimony that was not admissible, and I need to correct the record in that regard, in this way: It is agreed between the parties that [the plaintiff] has no recollection of any of the events preceding the collision in question. Therefore, you are to disregard any comments or statements attributed to her regarding the collision."

Despite the court's instruction to disregard McKay's comments about the plaintiff's recollection of the collision, the plaintiff's counsel moved for a mistrial, arguing: "[I]n this kind of situation, an instruction . . . simply is not enough. It was suggested by Dr. McKay that [the plaintiff] . . . may or may not have seen [something] immediately prior to getting hit in the roadway in this case . . . when she has clearly stated time and again that she has no recollection of those events. Dr. McKay's testimony seemed to suggest she, in fact, did have recollection of the events, and that she somehow saw the defendant's vehicle in the roadway right . . . before getting hit and saw it speed up and just simply couldn't make it [to the other side of the street]. . . . [T]his type of evidence, which was agreed to be kept out, is clearly inadmissible in the first place, because it's hearsay about three times over. It was a statement contained in a police report that both sides agreed was not admissible and should not be allowed in . . . . [T]hat type of misleading evidence is obviously also prejudicial to the plaintiff, intimates that somehow, [the] plaintiff . . . could have made it across the road or darted out into the road and saw the vehicle and was aware of the vehicle . . . . It's impossible in a situation like [this] . . . to un-ring a bell . . . ."

The defendant's counsel responded: "I think that the remedy . . . agreed upon is sufficient. I don't think this warrants a mistrial. . . . [The jury] just heard an instruction . . . . They heard [the plaintiff]. . . . Everybody denied any knowledge on the part of [the plaintiff], and I think [the jury] believe[s] her, so I don't think that they're not going to listen to this instruction, so I would oppose a mistrial."

The court denied the plaintiff's motion for a mistrial, stating: "I believe that . . . it's premature to grant a motion for mistrial, and I don't regard the agreed three-sentence statement that I . . . read . . . as being the only way to address that. The fact of the matter is that we don't know whether it'll have the slightest effect . . . ."

Thereafter, on March 31, 2016, the plaintiff filed a motion to set aside the verdict and for a new trial pursuant to Practice Book §§ 16-35 and 16-37, in which she argued, inter alia: "The trial court erred in refusing to grant a mistrial due to the admission of the videotaped statement of Dr. McKay regarding causation, as this testimony relied on three levels of hearsay, and as the parties had agreed Dr. McKay would not testify concerning causation . . . ." The court denied this motion on April 5, 2017.

On May 18, 2017, the plaintiff filed a motion for articulation "of the decision of the trial court . . . denying her posttrial motion to set aside the verdict and for a

new trial . . . ." The plaintiff argued, inter alia, that "the trial court erred in refusing to grant a mistrial when inadmissible, prejudicial hearsay was introduced during the defendant's presentation of the videotaped trial testimony of . . . Dr. McKay." On August 7, 2017, the court denied the plaintiff's motion for articulation, stating the following with regard to the plaintiff's claim that the court erred in refusing to grant a mistrial on the basis of McKay's statement: "[T]he court perceives no error in refusing to grant a mistrial because unwelcome testimony was included in the video testimony of [McKay] at trial. When the motion for mistrial was first made, the court found the curative instruction to the jury—an instruction to which plaintiff's counsel agreed—adequate for the reasons stated on the record. The court still perceived no error in denying a mistrial when it was again requested as part of the motion for a new trial because, even in hindsight, the court believes the curative instruction was proper and sufficient."

"The standard for review of an action upon a motion for a mistrial is well established. While the remedy of a mistrial is permitted under the rules of practice, it is not favored. [A] mistrial should be granted only as a result of some occurrence upon the trial of such a character that it is apparent to the court that because of it a party cannot have a fair trial . . . and the whole proceedings are vitiated. . . . On appeal, we hesitate to disturb a decision not to declare a mistrial. The trial judge is the arbiter of the many circumstances which may arise during the trial in which his function is to assure a fair and just outcome. . . . In [our] review of the denial of a motion for mistrial, [we recognize] the broad discretion that is vested in the trial court to decide whether an occurrence at trial has so prejudiced a party that he or she can no longer receive a fair trial. The decision of the trial court is therefore reversible on appeal only if there has been an abuse of discretion." (Internal quotation marks omitted.) *Mazier* v. *Signature Pools, Inc.*, 159 Conn. App. 12, 40, 123 A.3d 1, cert. denied, 319 Conn. 933, 125 A.3d 207 (2015).

The denial of a motion to set aside the verdict is also reviewed under the abuse of discretion standard. See *Froom Development Corp.* v. *Developers Realty, Inc.*, 114 Conn. App. 618, 626, 972 A.2d 239, cert. denied, 293 Conn. 922, 980 A.2d 909 (2009). "The trial court possesses inherent power to set aside a jury verdict which, in the court's opinion, is against the law or evidence. . . . [The trial court] should not set aside a verdict where it is apparent that there was some evidence upon which the jury might reasonably reach [its] conclusion, and should not refuse to set it aside where the manifest injustice of the verdict is so plain and palpable as clearly to denote that some mistake was made by the jury in the application of legal principles . . . ." Id., 625.

"If curative action can obviate the prejudice, the drastic remedy of a mistrial should be avoided." (Internal quotation marks omitted.) *State* v. *Holley*, 327 Conn. 576, 630, 175 A.3d 514 (2018). "[I]n cases tried to a jury . . . curative instructions can overcome the erroneous effect of statements that a jury should not have heard. . . . Because curative instructions often remedy the prejudicial impact of inadmissible evidence . . . [w]e have always given great weight to such instructions in assessing claimed errors. . . . Thus, [a] jury is normally presumed to disregard inadmissible evidence brought to its attention unless there is an overwhelming probability that the jury will not follow the trial court's instructions and a strong likelihood that the inadmissible evidence was devastating to the [plaintiff]. . . . Consequently, the burden is on the [plaintiff] to establish that, in the context of the proceedings as a whole, the stricken testimony was so prejudicial, notwithstanding the court's curative instructions, that the jury reasonably cannot be presumed to have disregarded it." (Internal quotation marks omitted.) *State* v. *Boutilier*, 144 Conn. App. 867, 876–77, 73 A.3d 880, cert. denied, 310 Conn. 925, 77 A.3d 139 (2013).

In the present case, the court did not abuse its discretion in denying the plaintiff's motion for a mistrial and motion to set aside the verdict. Immediately after McKay's comment indicating that the plaintiff recalled walking across the street, the plaintiff's counsel corrected him, explaining that his statement was based on a police officer's mistaken interpretation of a comment by the plaintiff's mother. McKay admitted, during the deposition, that he was indeed mistaken, stating: "[The plaintiff] *didn't* recall the crash event itself." (Emphasis added.)

Even after the jury heard McKay correct the misstatement during his deposition, the court instructed the jury to ignore any comments that indicated that the plaintiff remembered the collision. The court's instruction was given shortly after the jury viewed the recording, meaning that the jurors did not have an opportunity to ruminate on the comment. Moreover, this court presumes that a jury will follow curative instructions, unless there is a strong probability that it will not do so. See *State* v. *Boutilier*, supra, 144 Conn. App. 876–77. In the present case, the plaintiff failed to point to any indicia that the jury did not follow the court's instruction to ignore McKay's comments. Accordingly, we conclude that the court did not abuse its discretion when it denied the plaintiff's motion for a mistrial and motion to set aside the verdict.

The judgment is affirmed.

In this opinion the other judges concurred.

<hr />

[1] The plaintiff also brought this action against the defendant Mitchell College but withdrew the action as against it. Our references in this opinion to the defendant are to Alexandria Moore.

[2] "[A]lthough Connecticut has adopted the doctrine of comparative negligence; see General Statutes § 52-572h (b); our statutes retain the term contributory negligence. See, e.g., General Statutes §§ 52-114 and 52-572h (b)." (Internal quotation marks omitted.) *Stafford* v. *Roadway*, 312 Conn. 184, 185 n.3, 93 A.3d 1058 (2014). Therefore, although the briefs filed in this appeal use the term comparative negligence, we use the term contributory negligence throughout this opinion.

[3] In the area where the collision occurred, Montauk Avenue is two lanes, with northbound traffic in one lane and southbound traffic in the other.

[4] The defendant's cell phone records showed that she was not using her cell phone when the collision occurred.

[5] McKay explained that a standard alcoholic drink is one that contains one and one-half ounces of 80 proof alcohol.

[6] General Statutes § 52-572h (b) provides in relevant part: "In causes of action based on negligence, contributory negligence shall not bar recovery in an action by any person or the person's legal representative to recover damages resulting from personal injury . . . if the negligence was not greater than the combined negligence of the person . . . against whom recovery is sought."

[7] The plaintiff contends that "[t]here was no evidence [the plaintiff] failed to yield the right-of-way (Special Defense no. 1); walked or ran in the path of [the defendant's] car (Special Defense nos. 2, 4); rendered herself a hazard (Special Defense nos. 2, 3); failed to keep a proper lookout or be attentive (Special Defense nos. 5, 6)." (Footnote omitted.) The plaintiff also argues that the defendant "failed to introduce any evidence that the conduct alleged in the special [defense]—e.g., [the plaintiff's] alleged inattentiveness, alcohol consumption—was causally connected to the collision."

[8] The statements by the plaintiff's friends that the plaintiff struggled to stand and navigate campus were made to a campus safety officer and were referred to during the testimony of toxicologist Charles McKay.

[9] General Statutes § 14-300b (a) provides in relevant part: "Each pedestrian crossing a roadway at any point other than within a crosswalk marked as provided in subsection (a) of section 14-300 or any unmarked crosswalk or at a location controlled by police officers shall yield the right of way to each vehicle upon such roadway. . . ."

[10] General Statutes § 14-300c (b) provides: "No pedestrian shall suddenly leave a curb, sidewalk, crosswalk or any other place of safety adjacent to or upon a roadway and walk or run into the path of a vehicle which is so close to such pedestrian as to constitute an immediate hazard to such pedestrian. No pedestrian who is under the influence of alcohol or any drug to a degree which renders himself a hazard shall walk or stand upon any part of a roadway."

[11] General Statutes §14-300d sets forth the duties of drivers in relation to pedestrians, providing in relevant part: "Notwithstanding any provision of the general statutes or any regulations issued thereunder, sections . . . 14-300b to 14-300e, inclusive, or any local ordinance to the contrary, each operator of a vehicle shall exercise due care to avoid colliding with any pedestrian . . . and shall give a reasonable warning by sounding a horn or other lawful noise emitting device to avoid a collision . . . ."

[12] General Statutes §14-300i (b), which also relates to the duties of drivers in relation to pedestrians, provides: "Any person operating a motor vehicle on a public way who fails to exercise reasonable care and causes the serious physical injury or death of a vulnerable user on a public way, provided such vulnerable user has shown reasonable care in such user's use of the public way, shall be fined not more than one thousand dollars." Pedestrians are included in the statute's definition of a "vulnerable user." See General Statutes § 14-300i (a).

[13] The plaintiff also argues that the trial court erred in concluding that the defendant's introduction of the inadmissible hearsay was invited by the plaintiff because the plaintiff's counsel failed to request that the portion of the recording at issue be edited out before the recording was shown to the jury. Because we conclude that the comments did not deprive the plaintiff of a fair trial and that any prejudice was cured by the court's instruction, we need not address this argument.